IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
<u>NORTHERN DIVISION</u>

| | | |
|---|---|---|
| PAUL POGUE and | ) | |
| PAUL POGUE, in his capacity as | ) | |
| owner of SURVEYORS' PARK | ) | |
| | ) | |
| Plaintiffs, | ) | CIVIL ACTION NUMBER |
| | ) | |
| v. | ) | 2:06-cv-148-MHT |
| | ) | |
| TONY CHANDLER, et al., | ) | |
| | ) | |
| Defendants. | ) | |

<u>BRIEF IN SUPPORT OF</u>

<u>DEFENDANTS' MOTION TO DISMISS</u>

<u>OR IN THE ALTERNATIVE, FOR SUMMARY JUDGMENT</u>

**I.**

**SUMMARY OF PLAINTIFF'S CLAIMS**

The Plaintiff's Complaint alleges that Tony Chandler and Danny

Clark, employees of the Alabama Forestry Commission, deprived him of his

civil rights under 42 U.S.C. Section 1981, 42 U.S.C. Section 1983, and 42

U.S.C. Section 1985 and denied him equal protection and due process of law

under the Fourteenth Amendment (Complaint, ¶1).  Defendants Chandler

and Clark are sued in their official and individual capacities (Complaint, ¶¶

4-5). The Plaintiff contends that he was the "owner, developer and promoter" of property known as Surveyors' Park (Complaint, ¶7) and that this property "experienced 'insurgency' and 'terrorist' style ground/soil damage and obliteration of unmanufactured forest products" (Complaint, ¶9). The Plaintiff alleges that he asked the Alabama Forestry Commission to investigate the activity at the Surveyor's Park property (Complaint, ¶10) and that he asked Defendant Clark to "invoke the applicable laws" (Complaint, ¶19). The Complaint alleges that Clark and Defendant Chandler "fabricated" an investigation into the Plaintiff's complaint "and failed to provide Plaintiff with the same and similar services as was provided to white citizens" (Complaint, ¶22).

## II.

### SUMMARY OF THE ARGUMENT

The Defendants contend that the case is due to be dismissed for three reasons. First, the Plaintiff has failed to state a claim upon which relief can be granted (see section V.A., *infra*). Second, the Plaintiff has not established that a case or controversy exists, and he thus lacks standing to maintain this action (see section V.B., *infra)*. Third, the Defendants contend that the case should be dismissed because the Plaintiff has failed to prosecute his action (see section V.C., *infra)*.

Alternatively, if the Court does not find sufficient grounds to dismiss this action for the reasons stated above, the Defendants contend that this case presents no genuine issue of material fact and that the Defendants are entitled to summary judgment as a matter of law pursuant to Rule 56(b), Federal Rules of Civil Procedure. Summary judgment is due to be granted for four reasons. First, to establish a *prima facie* case of discrimination, the Plaintiff must demonstrate that he was treated differently than similarly-situated persons from a non-protected class. The Plaintiff fails to identify any such persons in the Complaint, and his answers in his deposition confirm that he cannot identify even one person from a non-protected class who received better treatment from the Defendants than did the Plaintiff (see section V.D., *infra*).

Second, even assuming that the Plaintiff could establish a *prima facie* case of discrimination, the Plaintiff cannot maintain his claims against the Defendants in their official capacities because claims against a state and its officers and employees are barred by the Eleventh Amendment. (see section V.E., *infra*). Third, the Plaintiff cannot maintain his claims against the Defendants in their individual capacities because the Defendants are entitled to qualified immunity as to these claims. (see section V.F., *infra*). Fourth, even if the Plaintiff could prove a violation of his Fourteenth Amendment

rights, the Defendants would have reached the same conclusions regardless of any unlawful motive or intent. (see section V.G., *infra*).

## III.

### STATEMENT OF UNDISPUTED FACTS

For purposes of the Defendants' Motion to Dismiss and alternative Motion for Summary Judgment only, the Defendants submit the following statement of facts. These facts are either undisputed or are taken in the light most favorable to the non-moving party (i.e. the Plaintiff). The Defendants reserve the right to dispute facts as material if allegations taken from the Complaint later prove to be inaccurate.

The Plaintiff contacted the Alabama Forestry Commission and asked the agency to investigate "missing forestry products" (Exhibit A, Deposition of the Plaintiff, page 17, lines 3-11). Defendant Danny Clark is a Forestry Specialist in the Chilton County office of the Alabama Forestry Commission (AFC). He has been employed with AFC for 20 years (Exhibit B, Affidavit of Danny Clark, ¶2). Defendant Tony Chandler is a Regional Investigator with AFC. He has been employed by AFC for 21 years (Exhibit C. Affidavit of Tony Chandler, ¶2).

On July 5, 2005, Defendant Clark met with the Plaintiff, Todd Slusher of Cherokee Timber Company and others at a location in Perry County,

Alabama (Exhibit B, Affidavit of Danny Clark, ¶6-7).  During a discussion at the site, the Plaintiff and Slusher revealed that a contract existed between the Plaintiff and Slusher's company to harvest timber at the site.  The Plaintiff alleged that harvesting had taken place on a part of the property not included in the contract (*Id*., ¶7).  After further discussion and review of the activity on the property, Clark determined that no violation of Alabama law had taken place at the site and that any unauthorized cutting of timber on the property was a civil matter between the Plaintiff and Slusher (*Id.*, ¶¶8-10).

Subsequent to the meeting of July 5, 2005, Clark wrote an incident report (Exhibit B, Affidavit of Danny Clark, Attachment A).  Clark turned the investigation of the matter over to Defendant Chandler when Chandler returned to work from vacation (Exhibit B, Affidavit of Danny Clark, ¶12).

After Chandler took over the investigation, he had contact with both the Plaintiff and a woman identified as Valissa Darden Pogue (Exhibit C, Affidavit of Tony Chandler, ¶¶7-8).  Valissa Darden Pogue is the wife of the Plaintiff (Exhibit A, Deposition of the Plaintiff, page 60, lines 4-5).  Chandler also interviewed Slusher in person (Exhibit C, Affidavit of Tony Chandler, ¶9) and Mark Kynard, (a logger hired by Slusher to cut the timber) by telephone (*Id*., ¶¶9, 11).  In addition to his interviews of Slusher and Kynard, Chandler made numerous other contacts to determine whether

all of the wood which the Plaintiff alleged had been cut without authorization had been accounted for (*Id.*, ¶¶11, 14).

After a thorough and accurate investigation, Chandler determined that all of the wood removed from the Perry County property was accounted for and agreed with Clark's conclusion that no crime had been committed (*Id.*, ¶18, 23). Chandler then attempted to assist in resolving the matter by performing research and supplying information related to Slusher's potential civil liability to the Plaintiff and encouraging Slusher to pay the amount required by Alabama law for an unauthorized cutting of timber (*Id.*, ¶¶19, 23).

At the Plaintiff's request, Chandler furnished the Plaintiff with a copy of the investigative report and other documents related to the investigation in October 2005 (*Id.*, ¶21 and Exhibit A, Deposition of the Plaintiff, page 104, lines 13-16). In December 2005, Chandler was contacted by Sandy G. Robison, an attorney representing International Paper Company in a lawsuit filed by this Plaintiff in the U.S. District Court for the Southern District of Alabama styled *Paul Pogue v. International Paper Company*. Following a written request from Robinson, Chandler mailed her a copy of the same documents he had furnished to the Plaintiff in October (Exhibit C, Affidavit of Tony Chandler, ¶22).

Both Defendants exercised discretionary authority with regard to the investigations they conducted of the Plaintiff's allegations and the conclusions they reached as a result of their investigation.  Both Clark and Chandler routinely exercise such discretionary authority in conducting criminal investigations and determining whether criminal charges should be filed in each case (Exhibit B, Affidavit of Danny Clark, ¶4 and Exhibit C, Affidavit of Tony Chandler, ¶4).

The Plaintiff claims that Clark and Chandler, in their individual and official capacities, discriminated against him on the basis of his race. (Complaint, ¶¶ 24, 41-44).  Both of the Defendants have sworn that the Plaintiff's race played no part in their investigations of the Plaintiff's allegations of unauthorized cutting of timber.  (Exhibit B, Affidavit of Danny Clark, ¶14, Exhibit C, Affidavit of Tony Chandler, ¶24).  Plaintiff testified at his deposition that the only evidence he has of any discrimination is the fact that he is black and Clark and Chandler are white:

> Q     [W]hat makes you believe that Mr. Clark's investigation was slanted for racial reasons?
> A     First of all, as it was understood and determined out there on the property, all of these people that were involved in what we're talking about, which makes the basis of this complaint, were white people. . . .
> Q     Do you have any evidence that Mr. Clark discriminated against you on the basis of your race?
> A     All indications that I think a jury, if they were to hear the facts, they will conclude that definitely not only was I discriminated

> and denied equal benefits under the workings of the law, but also it would be clearly shown that due to the nature of the matters and those involved and equipment involved, which are owned by white people, caused Mr. Clark to do nothing, which would benefit all white people.
>
> Q    What evidence do you have, if any, that Mr. Clark handled his investigation in particular ways because of either your race or the race of the other people involved?
>
> A    Well, he knew my race and he also knew the race of all those people that were involved. . . .

(Exhibit A, Deposition of the Plaintiff, page 85, line 18 – page 87, line 13).

The Plaintiff is also basing his claim on the unsubstantiated hearsay gossip of unidentified individuals who at most offered unsupported opinions about the matter:

> Q    Okay. At the bottom of that page it says that these people, quote, failed to provide plaintiff with the same and similar services as was provided to white citizens. Are you saying that white citizens got better treatment than you did from Mr. Chandler and Mr. Clark?
>
> A    Around the well—around the well, the conversation led me to believe that.
>
> Q    What was said that led you to believe that?
>
> A    If I had been a white person, something would have been done for me.
>
> Q    Who said that?
>
> A    The people around the water well.
>
> Q    Could you tell me the names?
>
> A    No, sir.
>
> Q    Is there anything else that leads you to believe that Tony Chandler and Danny Clark would have given white people better treatment than they gave to you?
>
> A    That's what the conversation in the community around the water well suggested to me.

(Exhibit A, Deposition of the Plaintiff, page 125, line 19 – page 126, line

22).

The "water well" is simply a community gathering place, and Plaintiff

could not identify the names of the people making such unsupported

statements:

> Q    What is this water well you're speaking of?
> A    Well, this is a place where people congregate, come together to
>      just talk in that particular community.
>
> *   *   *
>
> Q    Is it a park of some sort?
> A    Yes, sir.
> Q    Who was present at the water well when this conversation took
>      place?
> A    Unknown people that were coming to get their water jugs filled
>      up.  I didn't ask – I didn't ask – I didn't intend to identify them
>      and didn't want to identify their names.

(Exhibit A, Deposition of the Plaintiff, page 65, line 15 – page 66, line 9).

The Plaintiff is not able to identify any other black person who

allegedly received discriminatory treatment from the Alabama Forestry

Commission:

> Q    Do you have any information that Mr. Clark or Mr. Chandler
>      have discriminated against anybody as a result of their race?
> A    Yes, myself.  And that's what this case is about.
> Q    All right.  And the reason that you believe they discriminated
>      against you is because you were black and because they and the
>      other people that are involved are white; is that correct?
> A    I'm saying that the forestry laws would dictate bearing out the
>      truth of the race and the truth of how I was treated versus how
>      others were treated by the forestry commission . . . under like
>      and similar circumstances. . . .

> Q    Have you told me all the evidence or facts that you have
>       available to you today that suggest that Mr. Clark or Mr.
>       Chandler discriminated against you on the bassis of race?
> A    Well, as I said earlier, my Complaint speaks for itself. . . .
> Q    Okay.  But you've told me everything that you know up to
>       today, correct, about any discrimination?
> A    I've explained to you that according to the laws and according
>       to who I am and according to who others were and under like
>       and similar circumstances, I would think, and I strongly
>       believe, that racial discrimination has occurred. . . .

(Exhibit A, Deposition of the Plaintiff, page 90, line 16 – page 92, line 14).

Moreover, Plaintiff is not able to identify a single white person who

allegedly received better treatment from the defendants than Plaintiff

received:

> Q    Could you name me any white person who has received better
>       treatment from the forestry commission than you?
> A    I would have to get that information from Chandler and Clark.
> Q    As we sit here today, do you know of any white people who got
>       better treatment than you?
> A    That would be in the forestry commission's office.  *I don't have
>       that information.*

(Exhibit A, Deposition of the Plaintiff, page 126, line 23 – page 127, line 10)

(emphasis added).

> Q    But as we sit here today, you can't tell me any white person
>       who's gotten better treatment than you have; correct?
> A    That information is hidden within the Alabama Forestry
>       Commission, but it is in the public domain.
> Q    As we sit here today, you can't tell me any black person other
>       than yourself that you claim that Tony Chandler and Danny
>       Clark have discriminated against, correct?
> A    In their individual capacity and official capacity as agents of the
>       Alabama Forestry Commission.

Q    And you don't have any evidence other than your assumptions
      that they have behaved the way they have on the basis of your
      race; is that correct?
A    I'm saying to you again and again that I'm standing by my
      lawsuit Complaint and I'm going further by saying that in the
      public domain it has been made clear to me that I have been
      discriminated against.
Q    What is it in the public domain that –
A    That because of my race, Tony Chandler and Danny Clark
      being white and all the people involved being white, have
      violated my rights –
Q    And you say –
A    -- by failing to follow the laws of the State of Alabama.
Q    And why is it that you think that they failed to follow the laws
      of the State of Alabama because . . . of your race?
A    Because there would be a pattern there, pattern and practice
      there. We just need to find it. . . .

(Exhibit A, Deposition of the Plaintiff, page 164, line 12 – page 166, line 9).

It is not clear from Plaintiffs' testimony that he even owned the timber
that is the subject of his complaint or the real property where the timber was
located prior to being cut.  He claims that he does not know who owns the
real property at issue and that he "assumed" ownership of the personal
property, although he did not receive it either by purchase or gift:

Q    Okay.  And were the particular forest products that you're
      speaking of in this paragraph [9 of the Complaint], were they
      located on property that you owned?
A    I specifically state here that I experienced the insurgency and a
      terrorist-style ground/soil damage and obliteration of
      unmanufactured forest products within the State of Alabama.
      So that's within Alabama, yes.
Q    And was it on property that you owned?

A      It's on property that I have authority over. . . . Ownership could mean personal property. . . . So, therefore, we're talking about personal property that I have.

Q      Who owned the real property where these unmanufactured forest products were located?

A      I would not know that. I can't answer that question. But I can specifically answer that I owned the personal property for which I'm referring to here as unmanufactured forest products.

Q      How did you come to own that personal property?

A      Through assumption. I assumed it.

Q      How did you assume it?

A      Assumed it, acknowledged it as mine, claimed it as mine.

Q      What did you do in order to claim it as yours?

A      I accepted it as mine, that which I've identified in paragraph 9.

Q      Did you purchase it from somebody?

A      I assumed it, sir.

*   *   *

Q      Okay. Did somebody give it to you as a gift?

A      No one gave me a gift.

Q      Did anybody give you a piece of paper that says you now own this personal property?

A      No one gave me that, no paper.

Q      What did you do in order to assume this personal property?

A      I assumed it and claimed it as mine.

Q      Did you tell anybody that this is now mine?

A      Yes.

Q      Who did you say that to?

A      I told the public.

Q      How did you tell the public?

A      I announced it to the public.

*   *   *

Q      Who was present?

A      I do not recall, but there were several people present.

Q      Can you tell me any of the people who were present?

A      No, I cannot.

(Exhibit A, Deposition of the Plaintiff, page 28, line 18 – page 32, line 9).

To date, Plaintiff has not issued a notice to depose any witnesses in this case. (Exhibit D, Affidavit of Charles T. Conway, ¶4). In addition, more than 30 days ago, Defendants served requests for admission to the Plaintiff which Plaintiff failed to answer. (*Id.*, ¶7). Defendants separately move that the requests be deemed admitted.

The specific facts that the Plaintiff admits by his failure to respond to the Defendants' Request for Admission are as follows:

1. Admit that Plaintiff is not a record owner of the Property.

2. Admit that Plaintiff did not own the Timber at the time that it was allegedly wrongfully cut.

3. Admit that the person, persons, or organizations that cut the Timber offered to make payment therefore to the owner or owners of the Timber.

4. Admit that the Plaintiff's spouse made a request of the Alabama Forestry Commission to investigate the cutting of the Timber.

5. Admit that the Alabama Forestry Commission or its agents conducted the Investigation.

6. Admit that the Alabama Forestry Commission or its agents concluded that any dispute involving the cutting of Timber was a civil and not a criminal matter.

7. Admit that the Plaintiff cannot name any white person who has received better treatment from the Alabama Forestry Commission than was afforded the Plaintiff during the course of the investigation at issue in this complaint.

(Exhibit D, Affidavit of Charles T. Conway, Attachment B).

## IV.

## STANDARD OF REVIEW

With regard to the Defendants' Motion to Dismiss pursuant to Rule 12(b)(6), Federal Rule of Civil Procedure, all facts set forth in a plaintiff's complaint are to be accepted as true. *Oxford Asset Mgmt., Ltd. v. Jaharis*, 297 F.3d 1182, 1188 (11th Cir. 2002). The complaint is not to be dismissed "unless it is plain that the plaintiff can prove no set of facts that would support the claims in the complaint." (*Id.*) Similarly, "[i]f a defendant moves to dismiss a complaint for lack of standing, a court must accept as true all of the plaintiff's material allegations." *Bischoff v. Osceola County, Florida*, 222 F.3d 874, 879 (11th Cir. 2000). The Defendants' burden in filing a Motion to Dismiss for failure to prosecute under Rule 41(b) is to demonstrate on the part of the opposing party a "clear record of delay or willful contempt and a finding that lesser sanctions would not suffice."

*Jones v. Graham*, 709 F.2d 1457, 1458 (11th Cir. 1983), quoting *Hildebrand v. Honeywell, Inc.*, 622 F.2d 179, 181 (5th Cir.1980).

  With regard to the Defendants' alternative Motion for Summary Judgment, Defendants bear the initial burden of demonstrating the basis for their motion for summary judgment and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions that they believe show an absence of any genuine issue of material fact.  *Hairston v. Gainesville Publishing Co.*, 9 F.3d 913 (11th Cir, 1993).  In *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986) the Court held that if a party opposing summary judgment "fails to make a showing sufficient to establish the existence of an element essential to their party's case, and on which their party will bear the burden of proof at trial," summary judgment is due to be granted.

> [W]here the nonmoving party will bear the burden of proof at trial on a dispositive issue…Rule 56(e)…requires the nonmoving party to go beyond the pleadings and by affidavits, or by the "depositions, answers to interrogatories, and admissions on file," designate "specific facts showing that there is a genuine issue for trial…We do not mean that the nonmoving party must produce evidence in a form that would be admissible at trial in order to avoid summary judgment…Rule 56(e) permits a proper summary judgment motion to be opposed by any of the kinds of evidentiary materials listed in Rule 56 except the mere pleadings themselves…"

477 U.S. at 324.

For summary judgment purposes, an issue of fact is "material if it is a legal element of the claim, as identified by the substantive law governing the case, such that its presence might affect the outcome of the suit. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). An issue of fact is "genuine" if the record taken as a whole could lead a rational trier of fact to find for the nonmoving party. *Matsushita Electrical Industrial Company v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). The court must review the evidence, and all factual inferences properly drawn from the evidence, in the light most favorable to the nonmoving party. *Welch v. Celotex Corp.*, 951 F.2d 1235, 1237 (11th Cir. 1992); *Rollins v. TechSouth, Inc.*, 833 F.2d 1525, 1528 (11th Cir. 1987). It is improper for the court to weigh conflicting evidence or make credibility determinations; instead, "the evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in its favor." *Anderson*, 477 U.S. at 255. Where a reasonable fact finder may "draw more than one inference from the facts, and that inference creates a genuine issue of material fact, then the court should refuse to grant summary judgment." *Barfield v. Brierton*, 883 F.2d 923, 933-34 (11th Cir. 1989) (citation omitted).

# V.

## ARGUMENT

### A. THE PLAINTIFF'S COMPLAINT IS DUE TO BE DISMISSED FOR FAILURE TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED

The Defendants contend that the Complaint is due to be dismissed for failure to state a claim upon which relief can be granted.  The Defendants concede that the Plaintiff is only required to make "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed.Rule Civ.Proc. 8(a)(2).  On the other hand, the Defendants are entitled to "fair notice of what the plaintiff's claim is and the grounds upon which it rests."  *Conley v. Gibson*, 355 U.S. 41, 47 (1957).

The Plaintiff's Complaint makes vague references to conspiracies (Complaint, ¶¶35, 38) and "malfeasance and misfeasance" (Complaint, ¶24) on the part of the Defendants.  Yet there is not one instance in which the Plaintiff clearly and specifically states how he has been damaged by the alleged actions of the Defendants.  The Plaintiff claims that he was not provided "with the same and similar services as was provided to white citizens" (Complaint, ¶22), but he never specifically identifies what services he failed to receive.  "In civil rights actions, it has been held that a complaint will be dismissed as insufficient where the allegations it contains are vague

and conclusory." *Fullman v. Graddick*, 739 F.2d 553, 556-557 (11th Cir. 1984).

The Supreme Court has noted that "it should not prove burdensome for a plaintiff who has suffered an economic loss to provide a defendant with some indication of the loss and the causal connection that the plaintiff has in mind." *Dura Pharmaceuticals, Inc. v. Broudo*, 544 U.S. 336, 347 (2005). This Complaint is replete with vague allegations and is lacking in facts to support those allegations. "[C]onclusory allegations, unwarranted deductions of facts or legal conclusions masquerading as facts will not prevent dismissal." *Oxford Asset Mgmt., Ltd. v. Jaharis*, 297 F.3d 1182, 1188 (11th Cir. 2002). Moreover, the Court's "duty to liberally construe a plaintiff's complaint in the face of a motion to dismiss is not the equivalent of a duty to re-write it for [the plaintiff]." *Peterson v. Atlanta Hous. Auth.*, 998 F.2d 904, 912 (11th Cir. 1993).

The Plaintiff fails to supply specific facts upon which his claim is based, and his action is due to be dismissed for failure to state a claim upon which relief can be granted pursuant to Rule 12(b)(6), Federal Rules of Civil Procedure.

## B. THE PLAINTIFF'S CLAIM IS DUE TO BE DISMISSED FOR LACK OF STANDING

The Defendants argue that the Plaintiff's claim is due to be dismissed for lack of standing. The Supreme Court has established that:

> [S]tanding imports justiciability: whether the plaintiff has made out a "case or controversy" between himself and the defendant within the meaning of Art. III. This is the threshold question in every federal case, determining the power of the court to entertain the suit.

*Warth v. Seldin*, 422 U.S. 490, 498 (1975). In establishing whether a plaintiff has standing to maintain his complaint, the court must determine that he has "alleged such a personal stake in the outcome of the controversy" that he is entitled to the relief sought. *Baker v. Carr*, 369 U.S. 186, 204 (1962). In other words, a plaintiff can invoke the jurisdiction of the federal courts only when he can show that he is the victim of "some threatened or actual injury resulting from the putatively illegal action…" *Linda R.S. v. Richard D.*, 410 U.S. 614, 617 (1973).

In this case, the Plaintiff has demonstrated by his own actions and words that no "case or controversy" exists which entitles him to the relief demanded in his complaint. After the Defendants' investigation was complete, the Plaintiff demanded a letter from Chandler to the effect that the Plaintiff had never initiated a complaint concerning an unauthorized cutting

of timber (Exhibit C, Affidavit of Tony Chandler, ¶23, see also Attachment M to this Exhibit). During his deposition, the Plaintiff stated flatly that his complaint "does not concern the cutting of the timber." (Exhibit A, Deposition of the Plaintiff, page 11, lines 12-17). The Plaintiff first denied knowing who owned the forest products allegedly missing from the Perry County property (*Id.*, page 19, lines 3-8). When pressed on this issue, the Plaintiff claimed that he "assumed" ownership of some forest products by announcing his ownership to the public (*Id.*, page 30, line 6 – page 32, line 3). However, the Plaintiff later claimed that missing forest products had nothing to do with this lawsuit (*Id.*, page 113, line 9 – page 114, line 6). Adding to the confusion, the Plaintiff at one point denied owning the property that was the subject of the complaint he made to the Alabama Forestry Commission (*Id.*, page 101, lines 13-23) and later denied any personal knowledge of missing timber, making a vague assertion that he could visit the property in Perry County and "produce you with evidence" (*Id.*, page 162, lines 2-7). The Plaintiff could not, or would not, specifically identify what matters he asked the Defendants to investigate, other than to agree that he asked the defendants to investigate "all matters pertaining to forestry assets" belonging to *anybody* (*Id.*, page 120, lines 1-10, emphasis added).

The Plaintiff states that his lawsuit has nothing to do with the cutting of timber. He apparently cannot decide whether he owns (or ever owned) any forest products in Perry County. He claims not to know whether forest products were removed from the property without his authorization. He demanded a letter from one of the Defendants saying that the Plaintiff never initiated a complaint concerning missing forest products in Perry County.

The sole purpose of the Defendants' interactions with the Plaintiff was to investigate an alleged unauthorized cutting of timber on property the Plaintiff claimed to own. If the Plaintiff does not know whether forest products are missing from his property, if he does not know whether he even owns the property, if he did not initiate a complaint concerning missing forest products, and if the complaint he either filed or did not file with the Alabama Forestry Commission has nothing to do with timber cut from the property, the only logical conclusion is that the Plaintiff could not have been aggrieved by the Defendants' conduct of the investigation that resulted from the Plaintiff's allegations. He certainly has no standing to maintain an action based on his desire to have the Defendants conduct an investigation of forestry assets that could belong to "anybody."

There exists no case or controversy in which this Plaintiff has a "personal stake." Hence, the Plaintiff lacks standing to pursue his

complaint, the Court lacks jurisdiction under Rule 12(b)(1) of the Federal

Rules of Civil Procedure and this lawsuit is due to be dismissed.

### C. THE PLAINTIFF'S CLAIM SHOULD BE DISMISSED BECAUSE HE HAS FAILED TO PROSECUTE HIS CLAIM

Rule 41(b), Federal Rules of Civil Procedure, allows a defendant to

move for dismissal of an action "[f]or failure of the plaintiff to prosecute…"

"The authority of a federal trial court to dismiss a plaintiff's action with

prejudice because of his failure to prosecute cannot seriously be doubted."

*Link v. Wabash Railroad Company*, 370 U.S. 626, 629 (1962).

In this action, the Plaintiff has never attempted to depose the

Defendants (Exhibit D, Affidavit of Charles T. Conway, ¶4).  He has failed

to respond to motions filed by the Defendants (*Id.*, ¶5).  He has failed to

provide initial disclosures as required by the Federal Rules of Civil

Procedure and specifically requested by the Defendants (*Id.*, ¶6).  He has

failed to respond to the Defendants' written discovery requests (*Id.*, ¶¶7-8).

The Plaintiff has failed even to provide a reliable mailing address to which

the Defendants and the Court can direct mailings related to the case (*Id.*, ¶9).

The Plaintiff admits discarding or ignoring correspondence and other

documents he received from the Alabama Forestry Commission and its

attorneys (Exhibit A, Deposition of the Plaintiff, page 105, line 14 – page

106, line 13 and page 108, lines 5 – 21).  In short, the Plaintiff has failed to

take any actions which would indicate a serious intent to prosecute his

claims.  The Plaintiff's failure to respond to requests and correspondence

from the Defendants and his willful disregard for the deadlines imposed by

the Rules of Civil Procedure call for the dismissal of this complaint pursuant

to Rule 41(b), Federal Rules of Civil Procedure.

### D. THE PLAINTIFF HAS NOT ESTABLISHED A *PRIMA FACIE* CASE OF DISCRIMINATION

The Plaintiff raises two counts in his complaint.  The first is for

"violation of 42 U.S.C. 1981(a)," which applies to employment

discrimination and has no application here.  However, even if it did apply,

the Plaintiff is not able to make a prima facie case, as Defendants explain

below.   Second, the Plaintiff claims that Defendants engaged in a

conspiracy with Sandy G. Robinson to "undermine the truth," citing 42

U.S.C. 1985, which prohibits conspiracies to deny a party of his civil rights.

(Complaint, ¶44).  To prove this claim, Plaintiff must prove (1) a

conspiracy; (2) for the purpose of depriving him of the equal protection of

the laws; (3) an act in furtherance of the conspiracy; and (4) injury.  *E.g.*,

*Park v. City of Atlanta*, 120 F.3d 1157, 1161 (11th Cir. 1997).  Here, Plaintiff

does not try to plead specific facts that meet each of these elements.

However his claim is framed, the Plaintiff must prove racial

discrimination to survive summary judgment.  He cannot, because he

concedes that he has no evidence that he (or any black citizen) was treated differently than any white citizen by the defendants.

To prove a *prima facie* case of discrimination, the Plaintiff must demonstrate that he was treated differently than "similarly situated" persons outside of his protected class. *See Olmstead v. Dept. of Human Resources*, 527 U.S. 581 (1999). The "normal definition of discrimination" is "differential treatment of similarly situated persons." (Kennedy, J., concurring in the judgment). In this case, the Plaintiff has failed to identify any similarly situated persons outside of his protected class who received treatment different than that he received from the Defendants.

The Plaintiff's Complaint alleges that the Defendants "failed to provide Plaintiff with the same and similar services as was provided to white citizens…" (Complaint, ¶22). Yet the Complaint is devoid of a single example of any white citizen who made any complaint similar to the one made by the Plaintiff, much less a complaint in which a white citizen received services better than those provided to the Plaintiff.

The nearest the Plaintiff came at any point to identifying anyone outside of his protected class who received differential treatment was during the following exchange at his deposition:

> Q: Okay. At the bottom of that page is says that
> these people, quote, failed to provide plaintiff with

the same and similar services as was provided to
white citizens.  Are you saying that white citizens
got better treatment than you did from Mr.
Chandler and Mr. Clark?
A:  Around the well—around the well, the
conversation led me to believe that.
Q:  What was said that led you to believe that?
A:  If I had been a white person, something would
have been done for me.
Q:  Who said that?
A:  The people around the water well.
Q:  Could you tell me the names?
A:  No, sir.
Q:  Is there anything else that leads you to believe
that Tony Chandler and Danny Clark would have
given white people better treatment than they gave
to you?
A:  That's what the conversation in the community
around the water well suggested to me.

(Exhibit A, Deposition of the Plaintiff, page 125, line 19 – page 126, line

22).

     Thus, the Plaintiff's assertion that similarly situated persons outside

his protected class received better treatment than he received rests solely and

completely on the alleged statements of "people around the water well" who

"suggested" that white citizens would have received better treatment from

the Defendants.  The Plaintiff could not name any person who supplied this

information (*Id*., page 126, lines 9-14), nor could he identify the location of

this well (*Id*, page 65, line 15 – page 66, line 2).  Additionally, when the

Plaintiff was asked if he could name any white person who had received

better treatment than was afforded to him, the Plaintiff demonstrated no personal knowledge of any such fact, stating that he "would have to get that information from Chandler and Clark" (*Id*., page 126, line 23 - page 127, line 4).

Moreover, the Plaintiff admitted numerous times in his deposition that he lacked a factual foundation to support his claims. When asked to provide facts to support his allegations, the Plaintiff responded, "I have not done discovery" (*Id*., page 74, line 18). He stated that he could supply facts regarding his claims of discrimination "once the discovery is done" (*Id.*, page 89, lines 1-2) and admitted that he could not address the merits of his claims because "we have not done discovery…at this point" (*Id*., page 161, lines 11-12). Perhaps most astoundingly, the Plaintiff stated that he was relying on the Defendants to provide "the information that I know that they have to make my case for racial discrimination." (*Id*., page 91, line 23 – page 92, line 3). However, the Plaintiff has made no effort to obtain through discovery the evidence he claims the Defendants possess. (Exhibit D, Affidavit of Charles T. Conway, ¶4).

The Supreme Court looked negatively on the prospect of a plaintiff filing a lawsuit "with only a faint hope that the discovery process might lead eventually to some plausible cause of action." *Dura Pharmaceuticals, Inc.*

*v. Broudo*, 544 U.S. 336, 347 (2005), quoting H.R. Conf.Rep. No. 104-369,

p. 31 (1995).  This Plaintiff, by his own admission, has filed this action with

the "faint hope" that he can find facts during discovery to support his claims.

The 3rd Circuit referred to such behavior as "conduct[ing] a fishing

expedition in order to find a cause of action," (*Ranke v. Sanofi-Synthelabo,

Inc.*, 436 F.3d 197, 204 (3 rd Cir. 2006)) an apt description of what this

Plaintiff apparently has in mind in this case.

      The Plaintiff's inferences based on information he received in

conversations at a "water well," his claims that he will supply facts to

support his claims after he conducts discovery, and his other vague

assertions are not sufficient to establish a *prima facie* case of discrimination.

The 11th Circuit has held that "an inference based on speculation and

conjecture is not reasonable" and such inferences will not defeat a motion

for summary judgment.  *CBS Broadcasting, Incorporated v. Echostar

Communications Corporation*, 450 F.3d 505, 518, (11th Cir. 2006) quoting

*Chapman v. Am. Cyanamid Co.*, 861 F.2d 1515, 1518 (11th Cir. 1988).  *See

also*, *Asad v. Bush,* 170 Fed.Appx. 668, 2006 WL 622726 (11th Cir. March

16, 2006) (conclusory allegations do not state a claim under 42 U.S.C.

1985); *Eidson v. Arenas*, 910 F.Supp. 609 (M.D. Fla. 1995) (accord).  The

Plaintiff has failed to meet the initial burden required to proceed with his

complaint, and summary judgment is due to be granted in favor of the

Defendants.

### E.  SUMMARY JUDGMENT IS DUE TO BE GRANTED AS TO PLAINTIFF'S CLAIMS AGAINST THE DEFENDANTS IN THEIR OFFICIAL CAPACITIES

Assuming *arguendo* that the Plaintiff could establish a *prima facie*

case of discrimination, he could not maintain his Section 1981, 1983, and

1985 claims against the Defendants in their official capacities.  Both

Chandler and Clark are sued in their official capacities as employees of the

Alabama Forestry Commission (Complaint, ¶¶4-5).  The Alabama Forestry

Commission is an agency of the State of Alabama (Code of Alabama 1975,

Section 9-3-1).

In *Smith v. State of Alabama*, 996 F. Supp 1203 (M.D. Ala. 1998), this

Court held that the Eleventh Amendment prohibits Section 1981 and 1983

claims against the State of Alabama, as well as claims brought against

officers and employees of the State in their official capacities (*Smith* at

1210).  Other districts have recognized the Eleventh Amendment as a bar to

actions against State defendants in Section 1985 actions as well (*see Jones v.

Nat. Commun. and Surveillance Networks*, 409 F.Supp.2d 456 (S.D. N.Y

2006)).

Likewise, the Supreme Court has left no question that the Eleventh Amendment bars claims against a State and its agents and employees in their official capacities.  "[A] suit in which the State or one of its agencies or departments is named as the defendant is proscribed by the Eleventh Amendment…This jurisdictional bar applies regardless of the nature of the relief sought." *Pennhurst State Sch. V. Halderman*, 465 U.S. 89, 100 (1984).  "[T]he Eleventh Amendment bars a damages action against a State in federal court…This bar remains in effect when State officials are sued for damages in their official capacity." *Kentucky v. Graham*, 473 U.S. 159, 169 (1985).  *See also Monell v. Dept. of Social Services of the City of New York* at n. 55 ("official capacity suits generally represent only another way of pleading an action against an entity of which an officer is an agent") 436 U.S. 658, 690 n. 55 (1978).  Summary judgment is appropriate as to the Plaintiff's claims against the Defendants in their official capacities.

### F. SUMMARY JUDGMENT IS DUE TO BE GRANTED AS TO PLAINTIFF'S CLAIMS AGAINST THE DEFENDANTS IN THEIR INDIVIDUAL CAPACITIES BECAUSE OF THE DEFENDANTS' QUALIFIED IMMUNITY

Even if the Plaintiff had established a *prima facie* case, he could not maintain a claim against the Defendants in their individual capacities because the Defendants are entitled to qualified immunity.  Both Chandler and Clark are sued as individuals (Complaint, ¶¶4-5).  As shown in Section

V.E. above, both Defendants are employees of the Alabama Forestry Commission, an agency of the State of Alabama.

The Supreme Court has established the rule that "government officials performing discretionary functions, generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). In determining whether a public official is entitled to a qualified immunity defense, the Eleventh Circuit uses a two-step analysis. *Sims v. Metropolitan Dade County*, 972 F.2d 1230, 1236 (11th Cir. 1992). First, the Court examines "whether the official established that he or she acted within the scope of discretionary authority when the allegedly wrongful acts occurred. *Id.* Once this is established, the Court looks to see "whether the plaintiff demonstrated that the official's actions violated clearly established rights." *Id.*

It is beyond dispute that the Defendants were exercising their discretionary authority with regard to every decision they made during the course of their investigation of the Plaintiff's claims. Clark is an experienced law enforcement officer who frequently exercised discretion in determining how to conduct criminal investigations and evaluate whether criminal charges should be brought as a result of such investigations (Exhibit

B, Affidavit of Danny Clark, ¶4). The same is true of Chandler (Exhibit C,

Affidavit of Tony Chandler, ¶4).

The Defendants, following their respective investigations, had to

determine whether to pursue criminal charges against the parties who

allegedly cut timber on the Plaintiffs property without authorization. The

applicable criminal statute repeatedly states that the removal of forest

products must be done "willfully and knowingly" in order for a defendant to

be found guilty of the unauthorized cutting and removal of timber (Code of

Alabama 1975, Section 9-13-60). State law imposes <u>civil</u> liability for

unauthorized cutting of forest products "regardless of whether act was done

knowingly or intentionally." (Code of Alabama 1975, Section 9-13-62).

Clark, who conducted the initial investigation of the Plaintiff's claims,

reached the conclusion that Kynard was authorized to be on the property

under the terms of the contract between the Plaintiff and Cherokee Timber

Company and that Kynard did not knowingly and intentionally cut over the

line (Exhibit B, Affidavit of Danny Clark, ¶8). Based on these facts, Clark

determined that "no crime had been committed" (*Id*., ¶9), and that any

dispute the Plaintiff had with parties who allegedly cut timber on his

property without authorization was "a civil matter between them." (*Id*.,

¶10). Similarly, Chandler relied on his investigative experience and

discretion when he "found no evidence to support a charge of theft." (Exhibit C, Affidavit of Tony Chandler, ¶18). Clearly, both Defendants were "government officials performing discretionary functions" as contemplated by the Supreme Court in *Harlow*.

Having established that the Defendants were acting within their discretionary authority, "the burden shifts to the plaintiff to show that qualified immunity is not appropriate." *Lee v. Ferraro*, 284 F.3d. 1188, 1194 (11th Cir. 2002). The Supreme Court has described the threshold question for a plaintiff attempting to meet this burden thus: "Taken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right?" *Saucier v. Katz*, 533 U.S. 194, 201 (2001). This Court has noted that, to defeat a claim of qualified immunity, the Plaintiff must "come forward with specific facts, concerning each defendant, indicating that each defendant has violated his fourteenth amendment rights" and "must allege specific acts." *Smith v. State of Alabama*, 996 F. Supp 1203, 1212 (M.D. Ala. 1998).

In the present case, the Plaintiff has failed completely to meet his burden of demonstrating that the Defendants are not entitled to qualified immunity. Instead of citing specific facts, the Plaintiff makes a series of vague allegations, such as that the defendants "failed to invoke the criminal

procedure law" (Complaint, ¶23), and that the Defendants' actions "amount to intentionally and deliberately malfeasance and misfeasance." (*Id*., ¶23). The exchange from the Plaintiff's deposition already referenced in Section V.D. above demonstrates that the Plaintiff is possessed of no facts which support his claims. (Exhibit A, Deposition of the Plaintiff, page 125, line 19 – page 126, line 22).

In this case, the most specific information the Plaintiff can provide to support his claim that his Fourteenth Amendment rights were violated is a recounting of a conversation at a "water well," involving people he cannot name. Based on the Plaintiff's failure to allege specific acts of discrimination by each defendant, "the court must conclude that the named defendants, sued in their individual capacities, are entitled to qualified immunity…" *Smith v. State of Alabama*, 996 F. Supp 1203, 1212 (M.D. Ala. 1998). Summary judgment is due to be granted as to the Plaintiff's claims against the Defendants in their individual capacities.

### G. EVEN IF THE PLAINTIFF COULD PROVE A VIOLATION OF HIS FOURTEENTH AMENDMENT RIGHTS, THE DEFENDANTS WOULD HAVE REACHED THE SAME CONCLUSIONS REGARDLESS OF ANY UNLAWFUL MOTIVE OR INTENT

The mixed-motives defense has been used primarily in employment litigation to bar liability when a defendant proves that the same decision

would have been made absent any bias toward the plaintiff. *Price Waterhouse v. Hopkins*, 490 U.S. 228 (1989). The 11th Circuit has held that "this defense effects a total avoidance of liability, such that if a defendant proves that it would have taken the same action in the absence of discriminatory intent, the plaintiff is not entitled to any relief." *Harris v. Shelby County Board of Education*, 99 F.3d 1078, 1085 n. 5 (11th Cir. 1996) (citing *Turnes v. AmSouth Bank, N.A.,* 36 F.3d 1057, 1062 (11th Cir. 1994). While this is not an employment discrimination case, an application of the same analysis used in *Price Waterhouse* and *Harris* would lead to the conclusion that Chandler and Clark would have reached the same decisions with regard to the Plaintiff's allegations regarding the unauthorized cutting of timber in Perry County even if the Plaintiff could provide some proof of disparate treatment on the part of the Defendants.

It should be noted that the Defendants deny any discriminatory bias toward the Plaintiff. Chandler adamantly denies that he treated the Plaintiff differently because of the Plaintiff's race, noting that he "conducted [his] investigation in the same manner that [he] would have conducted an investigation of a similar matter for anyone." (Exhibit C, Affidavit of Tony Chandler, ¶24). Likewise, Clark denies "that Mr. Pogue's race had any effect on how I treated him or handled this matter." (Exhibit B, Affidavit of

Danny Clark, ¶14).  To the contrary, both defendants worked quickly and professionally to investigate the Plaintiff's initial allegations.  Upon being notified of the matter on July 5, 2005, Clark contacted the Plaintiff immediately and set up a meeting with the Plaintiff within 90 minutes of the first contact.  (*Id*., ¶5).  Chandler went far beyond the legal requirements of his official position in attempting to assist the Plaintiff in resolving issues involved in receiving compensation pursuant to Section 9-13-62 of the Code of Alabama.  (Exhibit C, Affidavit of Tony Chandler, ¶¶17, 19, 24).  In short, the investigation of the Plaintiff's unauthorized timber cutting allegations was "thorough and accurate" (*Id.*, ¶18) and was conducted with no racial animus whatsoever (*Id.*, ¶24 and Exhibit B, Affidavit of Danny Clark, ¶14).

However, assuming *arguendo* that the Plaintiff could prove that such an animus existed, it is clear that the Defendants (or another investigator in their place) would have made the same decisions and reached the same conclusions that resulted from their respective investigations.  Both Clark and Chandler are trained, experienced, professional law enforcement officers who have conducted hundreds of investigations into alleged violations of the forestry laws of Alabama.  (Exhibit B, Affidavit of Danny Clark, ¶¶3-4 and Exhibit C, Affidavit of Tony Chandler, ¶¶3-4).  Clark conducted the initial

investigation of the Plaintiff's allegations, and applied his training, experience, and knowledge of relevant Alabama law (Exhibit B, Affidavit of Danny Clark, ¶¶5-9). Clark found that "it was clear…that no crime had been committed." (*Id.*, ¶9). Chandler completed the investigation, conducting lengthy and thorough research into all aspects of the Plaintiff's allegations and applying his own training, experience, and familiarity with relevant law. (Exhibit C, Affidavit of Tony Chandler, ¶¶5-19). Chandler reached the same conclusion as Clark, namely that there was "no evidence to support a charge of theft." (*Id.*, ¶18).

The Defendants conducted an investigation that would have resulted in the same outcome irrespective of any alleged animus toward the Plaintiff. Using the Supreme Court's *Price Waterhouse* analysis and the 11th Circuit's holding in *Harris*, it is clear that the Plaintiff cannot show that his rights were violated, even if he could prove a discriminatory intent on the part of the Defendants.

Further, even if the Defendants failed to conduct a proper investigation of the Plaintiff's claims, the Plaintiff was not prevented from pursuing criminal charges against anyone he believed to have removed forest products from his property without his authorization. If the Plaintiff believed that a crime had been committed, he had the right and the

36

opportunity to file a complaint through the Sheriff's office or the District Attorney's office in Perry County. He was never discouraged from doing so (Exhibit C, Affidavit of Tony Chandler, ¶28).

The Defendants would have taken the same actions and reached the same conclusions regardless of any alleged disparate treatment of the Plaintiff. The Defendants are entitled to the defense of mixed motives, and summary judgment in favor of the Defendants is appropriate.

## VI.

## CONCLUSION

For the foregoing reasons, the Defendants respectfully request that this Court to dismiss this Complaint or in the alternative, to enter summary judgment in favor of the Defendants.

Respectfully submitted,

TROY KING
ATTORNEY GENERAL
KIN047
BY


s/Linda C. Breland
Assistant Attorney General
BRE001

s/Charles T. Conway
Assistant Attorney General
CON029

s/James W. Davis
Assistant Attorney General
DAV103

s/Winfield J. Sinclair
Assistant Attorney General
Attorney No. ASB-1750-S81W

Attorneys for Defendants
Chandler and Clark

## CERTIFICATE OF SERVICE

I hereby certify that on the 29th day of September, 2006, a copy of the foregoing has been electronically filed with the Clerk of the Court using the CM/ECF system, and that a copy of the same has been sent by First Class Mail to the plaintiff:

> Paul Pogue
> 301 Kahn Street
> The Mays Building
> Montgomery, Alabama 36104
>
> s/Charles T. Conway
> Assistant Attorney General

Addresses of counsel:

| | |
|---|---|
| Linda C. Breland | James W. Davis |
| Assistant Attorney General | Assistant Attorney General |
| | |
| Charles T. Conway | Winfield J. Sinclair |
| Assistant Attorney General | Assistant Attorney General |
| | |
| Alabama Forestry Commission | Office of the Attorney General |
| P.O. Box 302550 | 11 South Union Street |
| Montgomery, Alabama 36130 | Montgomery, Alabama 36130 |
| Telephone: (334) 240-9300 | Telephone (334) 242-7300 |
| Fax:          (334) 240-9390 | Fax:          (334) 353-8440 |

E-mail addresses:
Linda.Breland@forestry.alabama.gov      JimDavis@ago.state.al.us
Tom.Conway@forestry.alabama.gov        WSinclair@ago.state.al.us