IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| PAUL POGUE and<br>PAUL POGUE, in his capacity as<br>owner of SURVEYORS' PARK<br><br>    Plaintiffs,<br><br>v.<br><br>TONY CHANDLER, et al.,<br><br>    Defendants. | )<br>)<br>)<br>)<br>)  CIVIL ACTION NUMBER<br>)<br>)  2:06-cv-148-MHT<br>)<br>)<br>)<br>)<br>) |

**State of Alabama**
**County of Chilton**

### AFFIDAVIT OF DANNY CLARK

Before me, a Notary Public in and for said County and State, personally appeared Danny Clark and, after having been by me first duly sworn, deposes and says under oath as follows:

1. My name is Danny Clark. I am over (19) nineteen years of age and have personal knowledge of the facts as are set out herein.

2. I am employed by the Alabama Forestry Commission (AFC) as a Forestry Specialist in the Chilton County office. I have been employed by the Alabama Forestry Commission for 20 years.



EXHIBIT B

3. I completed training to become a law enforcement officer in the state of Alabama in 1990. I was commissioned as a law enforcement officer for the Alabama Forestry Commission on December 4, 1990.

4. Since receiving my law enforcement commission, I have personally participated in more than 200 investigations of alleged violations of the forestry-related laws of Alabama. 103 of these investigations resulted in criminal charges being filed. The remainder of the investigations resulted in no criminal charges being filed. In the cases in which no criminal charges were filed, I did not find sufficient evidence that a crime occurred to support the filing of criminal charges. In many of these cases, I advised the complainants that civil remedies might be available to them.

5. I know the plaintiff, Paul Pogue. At approximately 8:30 a.m. on July 5, 2005, I was contacted by Southwest Regional Forester Gary Cole concerning a report of an alleged unauthorized cutting of timber in Perry County, Alabama. Because AFC Southwest Regional Investigator Tony Chandler was on vacation, Mr. Cole asked me to conduct an initial investigation. I immediately contacted Mr. Pogue by telephone and made arrangements to meet him at the site of the alleged unauthorized cutting at 10:00 a.m. on the same day.

6. I contacted Cedric Hudson, manager of the Forestry Commission's office in Perry County, and asked him to meet me at the site. Mr. Hudson and I arrived at the site at 10:00 a.m. Mr. Pogue arrived at the site at 12:20 p.m. Todd Slusher arrived at the site at approximately 2:00 p.m.

7. Upon talking to Mr. Pogue and Mr. Slusher, I determined that Mr. Pogue had signed a contract with Mr. Slusher (doing business as Cherokee Timber Company) to

harvest some trees on the property. An individual named Mark Kynard was performing the actual cutting of the timber on behalf of Mr. Slusher. Mr. Pogue claimed that Mr. Kynard had harvested timber on what Mr. Pogue stated was the wrong side of a road that ran through the property. Mr. Kynard had harvested approximately three acres of trees from an area that was not included in the contract between Mr. Pogue and Mr. Slusher.

8. It was my professional opinion based on my training and experience in law enforcement that the unauthorized cutting was unintentional and that there had been no criminal intent on the part of Mr. Kynard or Mr. Slusher. Similarly, Mr. Kynard was not criminally trespassing because he had a right to enter onto the property under the timber contract.

9. Under Alabama law, the crime of trespassing requires that the violator "knowingly" enter or remain on restricted property. I concluded that Mr. Kynard did not know he was cutting in the wrong area and removed himself and his equipment immediately once Mr. Pogue told him he was cutting in the wrong area. I did not arrest anybody because it was clear to me that no crime had been committed.

10. I advised Mr. Slusher that he was legally bound to pay Mr. Pogue double the fair market value of the timber under Alabama law. Section 9-13-62 of the Code of Alabama states that where an unauthorized cutting of timber occurs, the individual or entity that cuts the timber is liable for twice the fair market value of the timber irrespective of whether the cutting was done knowingly or unknowingly. I advised Mr. Slusher and Mr. Pogue to work out an agreement and that this was a civil matter between them. I then left the scene.

11. Mr. Pogue, Mr. Slusher, Mr. Hudson, myself, and a female who arrived in the vehicle with Mr. Pogue were the only individuals at the scene. The female who arrived with Mr. Pogue did not identify herself and was not introduced to me. There were no employees or representatives of International Paper Company at the scene at any time on July 5, 2005. July 5, 2005 is the only date I have been on the property.

12. Following the meeting on July 5, 2005, I wrote a brief incident report (Attachment A) and turned the investigation and handling of the matter over to AFC Southwest Regional Investigator Tony Chandler after he returned from vacation. I also briefed Investigator Chandler as to the events of July 5, 2005. I provided assistance to Investigator Chandler in his investigation. I went with Investigator Chandler to interview Mr. Slusher at Mr. Slusher's office in Wetumpka, Alabama in October 2005.

13. I certify that the attached report is a true and correct copy of the original report that I wrote as an Alabama Forestry Commission investigator on the listed date. My initial report is also part of the complete investigation report filed by Investigator Chandler.

14. I have read the complaint of Paul Pogue and will address the substantive claims therein. First of all, I categorically deny that Mr. Pogue's race had any effect on how I treated him or handled this matter. What I saw and heard persuaded me that no criminal offense had occurred and I continue to believe that this is properly a civil matter between Mr. Pogue and Mr. Slusher.

15. Mr. Pogue references a "Jimmy Ingram" (Complaint at page 7, Paragraph 23), but Jimmy Ingram was not present at the scene. I have never met Jimmy Ingram and

4

I have not received any complaints of timber theft or unauthorized cutting by that individual, except for Mr. Pogue's unsubstantiated allegations.

16. Mr. Pogue states that I did not seize the logging equipment that was on the subject property (Complaint at Page 6, Paragraph 20(a)). I did not seize the equipment because I did not believe that a crime had been committed. In addition, Alabama law only authorizes the seizure of equipment if a felony has been committed (Code of Alabama Section 9-13-221). Even if I had determined that Mr. Kynard or Mr. Slusher had violated the criminal statute for willfully and knowingly cutting the timber without the authorization of the owner, that offense is a misdemeanor under Alabama law (Code of Alabama Section 9-13-60) and I could not lawfully seize the equipment.

17. Similarly, there was no reason for me to try to locate the timber in question. The timber would have been transported and sold to a mill and the proceeds paid to Slusher who, in turn, would pay the landowner the monies owed under the contract.

18. With respect to Mr. Pogue's allegations that the investigation was inaccurate and a cover-up for some sort of improper conduct by International Paper Company, I deny that allegation. The investigation found no evidence that the timber was stolen and no evidence that there were any missing loads of the unauthorized cutting. To my knowledge, International Paper Company had no involvement whatsoever with the matter I investigated, and there was nothing to "cover up."

19. I have never discussed any aspects of this investigation or Mr. Pogue's allegations with any employees or representatives of International Paper Company.

The facts stated in this Affidavit are true and correct. In verification of the truth of said facts and the truth of this Affidavit, my signature is subscribed hereto.

_Danny Clark_
Danny Clark
Forestry Specialist
Alabama Forestry Commission

SWORN TO and SUBSCRIBED BEFORE ME on this the ___6th___ day of September, 2006.

(SEAL)

_Peggy Baker_
Notary Public

My commission Expires: ___3/7/2010___

EXHIBIT B
ATTACHMENT A, p.1

# ALABAMA UNIFORM INCIDENT / OFFENSE REPORT

| Field | Value |
|---|---|
| 1. INCIDENT / OFFENSE / SUPPLEMENT | OFFENSE |
| 2. CASE # | 14029909.0 |
| ORI # | 0031000 |
| 5. DATE AND TIME OF THIS REPORT | 07 08 05  08:30 AM |
| 6. AGENCY NAME | Alabama Forestry Commission |
| 9. ADDRESS | 221 Co. Rd. 423 Clanton, AL 35045 |
| 7. PHONE | (205) 755-3042 |
| 12. VICTIM (LAST, FIRST, MIDDLE NAME) | Pogue, Paul |
| 30. TYPE INCIDENT OR OFFENSE | Unauthorized Cutting (MISD.) |
| 33. STATE CODE / LOCAL ORDINANCE | 9-13-60 |
| 45. OCCURRED ON OR BETWEEN | 06 30 05  8:00 AM — 07 05 05  11:00 AM |
| 49. PREMISE | OTHER — Forest land |

**61. STOLEN, RECOVERED, LOST, FOUND OR DESTROYED:**
About 3 acres of timber cut on wrong side of road.

TYPE OR PRINT IN BLACK INK

ACJIC—32 REV. 10-90

OFFICER'S WORK PRODUCT MAY NOT BE PUBLIC INFORMATION

**INCIDENT/OFFENSE REPORT CONTINUED**

- 95 DATE AND TIME OF REPORT: 07/08/05 08:30 AM
- 96 CASE #: 14029990
- 98 OFFENDER (checked)
- 99 NAME (LAST, FIRST, MIDDLE): Kynard, Mark

137 NARRATIVE:

On July 5, 2005 I (Danny Clark) received a complaint from Mr. Paul Pogue that a logger he had hired to cut 40 acres of timber had started cutting on the wrong side of the road from where he was supposed to. Mr. Pogue had already stopped the operation when I arrived. The logger said he had only cut 4 loads. I started my investigation at that time to determine if this was a criminal matter or a civil matter.

SIGNATURE: Danny Clark

149 REPORTING OFFICER: Danny Clark   ID #: 299

147 CASE STATUS: [2] INACTIVE