IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| PAUL POGUE and<br>PAUL POGUE, in his capacity as<br>owner of SURVEYORS' PARK | ) | |
| Plaintiffs, | ) | CIVIL ACTION NUMBER |
| v. | ) | 2:06-cv-148-MHT |
| TONY CHANDLER, et al., | ) | |
| Defendants. | ) | |

State of Alabama
County of Escambia

AFFIDAVIT OF TONY CHANDLER

Before me, a Notary Public in and for said County and State, personally appeared Tony Chandler and, after having been by me first duly sworn, deposes and says under oath as follows:

1. My name is Tony Chandler. I am over (19) nineteen years of age and have personal knowledge of the facts as are set out herein.

2. I am employed by the Alabama Forestry Commission as a Regional Investigator for the Southwest Region. I have been employed by the Alabama Forestry Commission for approximately 21 years.



3. I completed the required training to become a law enforcement officer in the state of Alabama in September 1999. I was commissioned as a law enforcement officer for the Alabama Forestry Commission on October 9, 2002.

4. Since receiving my law enforcement commission, I have personally participated in approximately 150 investigations of alleged violations of the forestry-related laws of Alabama, including approximately 60 investigations involving the alleged theft or unauthorized cutting of timber. Of these 60 investigations, 28 resulted in criminal charges being filed. The remainder of the investigations did not result in criminal charges because I determined that, in those cases, there was not sufficient evidence to pursue criminal charges. In many of the cases where no criminal charges were filed, I advised the complainants that they might want to consider attempting to recover civil damages.

5. I was on vacation in early July 2005. Upon my return to work I was asked by Danny Clark of the Forestry Commission's Chilton County office to take over the investigation of an alleged unauthorized timber cutting incident in Perry County, Alabama that had occurred while I was on vacation. Mr. Clark briefed me concerning a meeting on July 5, 2005 at the site of the alleged unauthorized timber cutting.

6. On July 26, 2005, Ms. Valissa Darden Pogue faxed a complaint concerning an alleged theft, criminal trespass, and Best Management Practices (BMP) violations in Perry County (Attachment A). I contacted Ms. Pogue and told her that I could investigate the complaints related to timber theft and trespass, but that any BMP violations would have to be addressed by the Forestry Commission's regional management specialist. I told Ms. Pogue how to contact that person.

7. Ms. Pogue stated to me that she did not want anybody to go to jail over the incident but did want to be paid for all of the timber that had been removed. She told me that Cherokee Timber had paid her $1,000.00 for four loads of wood but that she believed that more timber than that had been cut and removed. She stated that she knew where her wood went. When I asked her where the wood had been taken, she told me "That's your job." She also told me that a man named Jimmy Ingram was in business with Mark Kynard (the man who cut the timber) and that I should look into the relationship between Mr. Ingram and Mr. Kynard.

8. I interviewed Paul Pogue by telephone. Mr. Pogue told me that he disagreed with his wife as to how to resolve the incident. Mr. Pogue told me that he was not interested in the wood or the money but wanted to prosecute the perpetrators for stealing his timber. Mr. Pogue told me that Mr. Kynard was working with Mr. Ingram and that they had been stealing timber for years. He told me that if I checked with the local paper mills I would confirm that.

9. I interviewed Todd Slusher at his office Cherokee Timber Company in Wetumpka, Alabama in October 2005. Mr. Slusher told me that he had signed a contract with the Pogues to cut some timber on their land. (Attachment B). I had already received a copy of this contract from Danny Clark, who obtained it as part of his initial investigation. Mr. Slusher said that he took Mark Kynard, a logger he hired to harvest the timber, to the site prior to the harvesting of the timber and showed him where to cut. Mr. Slusher stated that he was on vacation when the cutting took place and was unaware of any problems until he returned. At that time, he discovered that there had been a

problem and went to the site to meet with Mr. Kynard and remove the harvesting equipment as directed by Mr. Pogue.

10. Mr. Slusher told me that Mr. Kynard had removed four truckloads of timber and sold them to local mills. Mr. Slusher confirmed the accuracy of four load tickets which he said corresponded to the trees harvested from the Pogue property (Attachment C). The tickets stated that the wood had been sold to International Paper and processed at Riverdale Mill in Dallas County and Maplesville Saw Mill in Chilton County.

11. After my interview with Mr. Slusher, I spoke to Mr. Kynard by telephone. Mr. Kynard explained that the load tickets indicated that the wood had come from Macon County but Mr. Kynard stated that these were leftover tickets that he had used to document the trees from the Pogues' Perry County property. Paperwork in the pulp wood industry can be sloppy and the use of leftover tickets from one job to account for another job is not unusual. Similarly, an analysis of the harvesting activity on the subject property by Danny Clark and Cedric Hudson indicated that the number of truckloads (four) was consistent with the amount of timber that would have been removed from the Pogues' property (about three acres).

12. I investigated Mr. Pogue's allegations and found no evidence to support a claim that more than four truckloads of timber from the Pogues' property had been sold by Mr. Kynard around the date of the cutting activity on the Pogues' property.

13. I contacted over a dozen mills and dealers in central Alabama who stated that Jimmy Ingram had not sold timber to them for over two years. The mills stated that they had not issued any checks to Mr. Ingram in over two years. In fact, only one of the businesses I contacted had any records of doing business with Mr. Ingram at any time. I

contacted a forester in central Alabama who told me that, to his knowledge, Mr. Ingram was no longer in the timber business.

14. One of the mills I contacted regarding Mr. Ingram was International Paper Company (IPC). I spoke first with Richard Edmond in IPC's corporate security office in Mobile. He referred me to Ken Stacy at IPC's mill in Prattville, and I contacted Mr. Stacy by telephone. I asked Mr. Stacy to check and confirm all scale tickets turned in by Cherokee Timber Company and/or Mark Kynard. Mr. Stacy confirmed the ticket information during our telephone conversation.

15. I did discover that Mr. Kynard was using Mr. Ingram's old equipment but found nothing to indicate that Mr. Kynard was harvesting timber in collusion with Mr. Ingram, or that Mr. Ingram was involved in any way in the cutting activity that was the subject of my investigation.

16. I completed my investigation (except for some follow up work) and wrote an incident/offense report on October 6, 2005 (Attachment D, without attachments). I detailed my investigation and findings. I noted that I had an additional meeting scheduled with Ms. Slusher on October 10, 2005 and that:

> I will review records of deliveries and payments to Mark Kynard and match these with records from IPC and Saco Wood. If all records match up, I will have no evidence to substantiate the theft allegations. However, the liability of Cherokee Timber for the unauthorized cutting still has to be settled. Based on Alabama law, I will arrive at a dollar figure owed to the Pogues and present to Slusher at our meeting.

17. Accompanied by Mr. Clark, I met with Mr. Slusher, reviewed the records, and concluded that there was no evidence to support a theft charge. I also presented Mr Slusher with my internet research for the calculation of the average stumpage prices for

lumber (Attachment E) and a summary of the scale tickets with my calculation for the monetary value of the unauthorized lumber cut at double stumpage (Attachment F). On October 12, 2005, I wrote a supplement to my earlier report detailing my investigation and findings (Attachment G).

18. To the best of my knowledge and belief, my investigation was thorough and accurate. I found no evidence to support a charge of theft. Mr. Slusher had a contract to harvest lumber from the Pogue property. The harvested wood was accounted for and Ms. Pogue told me that she was paid $1,000 for the four loads of wood.

19. As it turned out, the wood that was harvested from Pogue property was not covered by the contract between Mr. Pogue and Cherokee Timber Company, making the harvest unauthorized. I calculated Cherokee Timber Company's civil liability under Alabama law (Code of Alabama, Section 9-13-62) and told Mr. Slusher that by law, he was required to pay double the fair market value of the wood. Mr. Slusher stated that if the Pogues presented a claim, he would allow his insurance company to handle the matter.

20. Mr. Pogue stated to me that he did not want to cause trouble for the logger or the timber buyer but wanted the investigation to extend to alleged "corruption" at International Paper Company. I found nothing to justify expanding the investigation beyond the original complaint.

21. On October 14, 2005, Mr. Pogue faxed me a letter requesting that I release a copy of my investigative report (Attachment H). I talked to Mr. Pogue by telephone and agreed to furnish him a copy of that report. Mr. Pogue asked me to leave a copy of the report at my office in Brewton, and said he or a representative would pick it up there. On

October 20, I prepared a memorandum letter to Mr. Pogue with the report and other relevant documents (Attachment I, without enclosures). Early the following week, I was away from the office and received word that Mr. Pogue was at the Forestry Commission office in Montgomery asking for the report. I asked the secretary at my office to fax the letter and other documents to Mr. Pogue at the Forestry Commission office in Montgomery. I later confirmed that the letter and other documents were faxed to Mr. Pogue in Montgomery.

22. In early December, 2005, Sandy G. Robinson, an attorney for International Paper Company telephoned me and requested that I furnish her with a copy of my investigation and other relevant documents. After she confirmed her request by a letter (Attachment J), I sent her a copy of my report with a cover letter (Attachment K, without enclosures). Because the investigation had been completed, the investigation report is a public document and is available to anybody who asks for a copy of it.

23. On February 13, 2006, I wrote to Mrs. Pogue, informed her that Mr. Clark and I had found no evidence to indicate that the timber was stolen from her property, that we believed her complaint to be civil in nature, and outlined her options in resolving the matter (Attachment L). I also wrote to Mr. Pogue on that date and responded to his telephone request for a letter stating that he had never officially signed or filed a complaint in my office (Attachment M).

24. I am aware that Mr. Pogue alleges that I somehow treated him or the investigation of the unauthorized cutting of timber in Perry County differently based upon his race. I categorically deny that allegation. I conducted my investigation in the same manner that I would have conducted an investigation of a similar matter for anyone.

My personal opinion is that, in encouraging the company to pay the Pogues the additional amount, I went above and beyond my responsibility to investigate the allegations of theft.

25. I certify that the attached reports are true and correct copies of the original documents maintained by the Alabama Forestry Commission investigator in the ordinary course of business and that I am a designated custodian of said documents.

26. Other than the contacts described in Paragraphs 14 and 22 above, I have never discussed any aspects of this investigation or Mr. Pogue's allegations with any employees or representatives of International Paper Company.

27. I have never been to the property in Perry County that is the subject of Mr. Pogue's complaint.

28. Mr. Pogue has always been free to swear out a warrant against anyone he believes committed a theft or was on his property without authorization, or to otherwise seek to initiate a criminal prosecution through the office of the Perry County District Attorney or the Sheriff of Perry County. I have never done or said anything to discourage Mr. Pogue from seeking to address his complaints through those offices or any other law enforcement agency.

Tony Chandler
Investigator
Alabama Forestry Commission

SWORN TO and SUBSCRIBED BEFORE ME on this the 15th day

of September, 2006.

(SEAL)

Ruth B. Carden
Notary Public

My commission Expires: 08-02-2008

EXHIBIT C
ATTACHMENT A

URGENT FAX TO: Mr. Chandler at 251-867-7302

July 26, 2005

TO: Alabama Forestry Commission
Mr. Tony Chandler
South West Region
State of Alabama

Request: **Forestry Investigation and Enforcement Relief**

Dear Forestry Investigator:

This is a request for help stemming from criminal trespass, destruction of property and transporting and selling of stolen timber fiber from property located at *section eight, township eighteen north, at range ten east, Perry County Alabama.* The creek is dammed and blocked causing side wall erosion to the property.

The purchase of stolen timber fiber may be verified by local and surrounding mills inventory log sheets. Criminal activity probably got started in the month of June throughout the early weeks of July 2005.

Finally, I am asking that your division of state government review and investigate and cause justice to be done under the circumstances. I am willing to cooperate and sign the necessary papers should criminal justice authorities so require.

Sincerely, Valissa D. R.
V. Darden, Landowner and timber owner
Route 6, Box No. 334
Selma, Alabama 36701

Copy to U.S. Forestry Service and other state and federal agencies.

EXHIBIT C
ATTACHMENT B
P. 1

# TIMBER PER CORD CONTRACT

STATE OF ALABAMA Perry COUNTY, ALABAMA

For and in consideration of None paid in Hand to me by Cherokee Timber Company, Inc. the undersigned, all Merchantable timber located in Section I N, R E Township 18N Sec 8 Range 10E containing 40 (50) acres, more or less.

As part and parcel of this contract the grantor agrees to the following rights, priviledges, And immunities for Cherokee Timber Company, Inc.

1. The right of access to the foregoing lands to Cherokee Timber Company, Inc. Its agents, successors, and assigns for the purpose of cutting, hauling and removing Said wood fiber; the express right to use any and all equipment necessary for the Convenient conduct of all cutting and hauling operations; the right to use, build and/ Or construct any road, bridge, culvert, or any other improvements necessary, Convenient, and ordinarily appurtenant to the ordinary activities of cutting, hauling And removal of said wood fiber.

2. All such other rights as are necessary and ordiarily appurtenant to the convenient cutting, hauling, manufacturing, loading, storing, stacking, shipping, handling, or drying of the wood fiber, and all products derived from such fiber, and the right to use the described lands for any and all the aforementioned purposes.

3. It is expressly understood that the period of time covered by this contract shall be 1 year (18 Months) from the signing date hereinafter stated, and upon expiration of this contract, Cherokee Timber Company, Inc.will have 30 days to reenter said lands and take up or otherwise remove any and all personal property which Cherokee Timber Company, Inc., its agents, successors, or assigns will have left on said lands. It is expressly understood that no improvements, machinery or road building materials which may be placed, erected or constructed on said lands by Cherokee Timber Company, Inc., its agents, successors or aassigns shall be deemed fixtures, but that the same are deemed and treated as personal property and shall remain in the absolute property of Cherokee Timber Company, Inc.

4. Cherokee Timber Company, Inc.at its sole discretion, will determine any and all delivery points for wood fiber hauled from said lands, and will, upon receipt of any changes in fiber specifications from any of its various outlets, immediately implement the same changes in its cutting and hauling operations. It is expressly agreed that Cherokee Timber Company, Inc. will be held blameless and not liable for any effect caused by any such change or changes In wood specifications.

EXHIBIT C
ATTACHMENT B
P.2

# TPC CONTRACT (PAGE 2)

5. Payment for wood fiber will be made to the grantor on a Weekly basis. The amount of payment for each wood fiber product will be as follows:

| | | | |
|---|---|---|---|
| Pine Pulp | $4/ton | Red Oak Logs | $275/MBF |
| Hard Pulp | $8/ton | White Oak Logs | $200/MBF |
| Pine Chip N Saw | $25/ton | Other Hard Logs | $150/MBF |
| Pine Plylogs | $35/ton | | |

Any advance payment will be repaid to Cherokee Timber Company, Inc from the first sufficient wood fiber receipts and any following payments will be made the Monday following the end of the stated pay period, if practical.

6. Cherokee Timber Company, Inc. ~~at its sole discretion~~, will furnish the grantor with copies of the tickets for all the wood fiber hauled from said lands ~~or a~~ statement sheet summarizing same, along with any credit or payment at each pay period.

7. Cherokee Timber Company, Inc. will only be responsible for payment to grantor for the specific wood fiber product or products successfully cut, hauled and delivered to any of its various outlets and for which Cherokee Timber Company, Inc. has reason to believe it will in turn be paid.

8. The grantor specifically retains the following exemptions, rights and immunities: Landowner will construct roads and creek crossings suitable to remove the timber

And We do expressly covenant and agree to and with the said Cherokee Timber We are lawfully seized and possessed of an indefeasible, fee simple title in and to said wood fiber, rights, powers and immunities herein granted and conveyed: That We have a good and perfect right to sell and convey the same, and that, subject to the terms and conditions of the contract, We will warrant and defend the title and peaceful possession of said wood fiber, rights, powers, immunities herein granted and conveyed unto Cherokee Timber Company, Inc. its sucessors and assigns.

Witness our hands and seals this the 17th day of February, ~~2001.~~ 2005

Witness ______________ Landowner [signature] 2-17-05

Witness ______________ Landowner [signature]

Witness ______________ Landowner [signature]

EXHIBIT C
ATTACHMENT B, p. 3

Mamie Darden, Valissa Darden and Paul Pogue (Alabama Civic Specialty Group, Inc.) wish to include the essential items into the timber sale contract:

1.Agreement entered into this 11th day of February, 2005, between Alabama Civic Specialty Group, Incorporated hereinafter called the seller , and Cherokee Timber Company Incorporated hereinafter called the buyer.

2. The Timber Sale Contract shall be governed by the laws of the State of Alabama.

3. Seller is the legal owner of said timber and warrants the title to the timber hereby conveyed against the lawful claims of all third parties.

~~4. A down payment of three thousand dollars shall be made to the seller upon execution of this contract.~~ Deleted Trees marked with blue paint shall not be cut.

5. All timber marked or products included in this contract, until paid in full, shall remain as the property of the seller.

6. This agreement will be in effect from February 11, 2005 to July 12, 2005, after which time the contract is null and void, unless written extension is granted by the seller. If no extension is granted, all rights to remaining timber return to the seller.

7. The seller is free from responsibility for any injury, death or property damage caused by the buyer's logging operation in the sale area during the tenure of this agreement.

8. It is understood by both parties that the buyer is an independent contractor and not an employee of the seller.

9. If requested by seller, buyer agrees to furnish current certificates for worker's compensation and public liability insurance.

10. SELLER MAY SUSPEND OPERATIONS, including removal of cut timber, if conditions of the contract are violated. Violations of conditions of the contract are sufficient grounds for termination.

11. Any modifications or amendments, to this contract must be written, dated, signed, and witnesses.

12. Prior to commencing harvesting operations, the buyer shall post a performance bond with in the amount of three hundred dollars. The bond is returned to the buyer upon satisfactory completion of the sale.

13. This agreement shall be binding on the heirs, administrators, executors, successors or assigns of both parties.

14. In witness whereof, the parties hereto have executed this Agreement this 17th day of February, 2005.

Paul Pogue for Seller(s) [signature] for V. Darden + M. Darden 2-17-05

Mr. Todd Slusher for the BUYER [signature: Todd Slusher]

Page 3 of 3

EXHIBIT C
ATTACHMENT C

INTERNATIONAL PAPER
RIVERDALE MILL
FIBER SCALE TICKET
06/30/2005 20:22:21

| | |
|---|---|
| TICKET NUMBER: | [redacted] |
| PRIMARY CONTRACT: | 5G07[illegible] |
| SPECIES: | MIX[illegible]WOOD |
| PRODUCT: | [illegible] |
| TRACT: | [illegible] |
| PRICE CODE: | LH |
| TRAILER ID: | 31055-02 |
| TRIP TICKET #: | |
| PRODUCER: | 33400 MARK KYNARD |
| COUNTY/STATE: | MACON, ALABAMA |
| SECONDARY HAULING: | |
| DATE IN: | 30/JUN/05 20:13 |
| DATE OUT: | 30/JUN/05 20:22 |
| INBOUND WEIGHT: | 74240 POUND |
| OUTBOUND WEIGHT: | 20580 POUND |
| NET WEIGHT: | 53660 POUND |
| NET TONS: | 26.83 TON 9.33 cd |
| SCALER: | E. HARRIS |
| COMMENTS: | |

INTERNATIONAL PAPER
RIVERDALE MILL
FIBER SCALE TICKET
07/[illegible] 2005 [illegible]

| | |
|---|---|
| TICKET NUMBER: | [redacted] |
| PRIMARY CONTRACT: | [illegible] |
| SPECIES: | PINE (SOFTWOOD) |
| PRODUCT: | LONG PULPWOOD |
| TRACT: | NONE LISTED |
| PRICE CODE: | LH |
| TRAILER ID: | 31055-02 |
| TRIP TICKET #: | |
| PRODUCER: | 33400 MARK KYNARD |
| COUNTY/STATE: | MACON, ALABAMA |
| SECONDARY HAULING: | |
| DATE IN: | 01/JUL/05 18:59 |
| DATE OUT: | 01/JUL/05 19:10 |
| INBOUND WEIGHT: | 59940 POUND |
| OUTBOUND WEIGHT: | 20760 POUND |
| NET WEIGHT: | 39180 POUND |
| NET TONS: | 19.59 TON |
| SCALER: | E. HARRIS 7.32 cd |
| COMMENTS: | |

INTERNATIONAL PAPER (CNS)
MAPLESVILLE SAW MILL
FIBER SCALE TICKET
06/29/2005 15:05:53

| | |
|---|---|
| TICKET NUMBER: | [redacted] |
| PRIMARY CONTRACT: | 5G077 |
| VENDOR: | CHEROKEE TIMBER CO INC |
| SPECIES: | PINE (SOFTWOOD) |
| PRODUCT: | TREE LENGTH MEDIUM SAWLOGS |
| TRACT: | POPE |
| PRODUCER: | 33400 MARK KYNARD |
| COUNTY/STATE: | MACON, ALABAMA |
| PRICE CODE: | 06 |
| TRIP TICKET #: | |
| # OF STEMS: | 34 |
| AVG LENGTH: | 25 |
| TRAILER #: | 31055-02 |
| DATE IN: | 29/JUN/05 14:58 |
| DATE OUT: | 29/JUN/05 15:05 |
| INBOUND WEIGHT: | 74260 POUNDS |
| DEDUCT WEIGHT: | 0 POUNDS |
| OUTBOUND WEIGHT: | 20800 POUNDS |
| NET WEIGHT: | 53460 POUNDS |
| NET TONS: | 26.73 TONS 9.99 cd |
| SCALER: | R. FIELD |

INTERNATIONAL PAPER
RIVERDALE MILL
FIBER SCALE TICKET
06/29/2005 18:58:29

| | |
|---|---|
| TICKET NUMBER: | [redacted] |
| PRIMARY CONTRACT: | 5G077 |
| SPECIES: | PINE (SOFTWOOD) |
| PRODUCT: | RANDOM LENGTH PULPWOOD |
| TRACT: | NONE LISTED |
| PRICE CODE: | LH |
| TRAILER ID: | 31055-02 |
| TRIP TICKET #: | |
| PRODUCER: | 33400 MARK KYNARD |
| COUNTY/STATE: | MACON, ALABAMA |
| SECONDARY HAULING: | |
| DATE IN: | 29/JUN/05 18:42 |
| DATE OUT: | 29/JUN/05 18:58 |
| INBOUND WEIGHT: | 62300 POUND |
| OUTBOUND WEIGHT: | 20740 POUND |
| NET WEIGHT: | 41560 POUND |
| NET TONS: | 20.78 TON 7.76 cd |
| SCALER: | E. HARRIS |

EXHIBIT C
ATTACHMENT D
P. 1

# ALABAMA UNIFORM INCIDENT/OFFENSE REPORT

| Field | Entry |
|---|---|
| Victim SSN | |
| Complainant SSN | |
| 1 Incident / Offense / Supplement | [X] Offense |
| 2 Case # | 5 3 0 4 1 1 1 0 9 |
| 3 SFX | |
| 4 ORI # | 0 0 3 1 0 0 0 |
| 5 Date and Time of This Report | 1 0 0 6 0 5 1400 |
| 6 Agency Name | Alabama Forestry Commission |
| 7 If Supplement Original Offense Date | |
| 8 Reported By | [X] Victim or |
| 9 Address (Street, City, State, Zip) | |
| 10 Phone | ( ) |
| 12 Victim (Last, First, Middle Name) | Pogue, Valissa Darden and Paul |
| 13 Address (Street, City, State, Zip) | Rt. 6 Box 334 Selma, AL 36701 |
| 14 Phone | (334) 269-4178 |
| 16 Employer/School | |
| 16 Occupation | |
| 17 Address (Street, City, State, Zip) | |
| 18 Phone | ( ) |
| 19 Resident / Non-Resident | [X] Resident |
| 20 Injury | |
| 21 Race | W |
| 22 Sex | Female |
| 23 HGT | 5'8 |
| 24 WGT | |
| 25 DOB | 1 1 2 8 6 2 |
| 26 Age | 42 |
| 27 Was Offender Known to Victim? | Y |
| 28 Victim Was (Explain Relationship) | Timber Client |
| 29 Code | |

## Event

| Field | Entry |
|---|---|
| 30 Type Incident or Offense | Unauthorized Cutting of Timber — [X] Misd. |
| 31 Degree (Circle) | 1 2 3 |
| 32 UCR Code | |
| 33 State Code/Local Ordinance | 9-13-60 |
| 34 Type Incident or Offense | Fel. / Misd. |
| 35 Degree (Circle) | 1 2 3 |
| 36 UCR Code | |
| 37 State Code/Local Ordinance | |
| 38 Place of Occurrence | S8 T18N R10E in Perry County Alabama |
| 39 Sector | |
| 40 Point of Entry | Door / Roof / Window / Other |
| 41 Method of Entry | Forcible / Att. Forcible / No Force |
| 42 Assault | Simple / Aggr. |
| 43 Treatment for Assault Injury | Y / N |
| Occurred On or Between | 0 6 2 8 0 5 and 0 7 0 5 0 5 |
| 45 Time | 0800 |
| 46 | S M (T) W T F S |
| 52 Time | 0800 |
| 53 | S M (T) W T F S |
| 47 Lighting | [X] Natural |
| 48 Weather | [X] Clear |
| 49 Premise | [X] Other: Forestland |
| 50 Code | |
| 54 Verify for Rape Exam | Y / N |
| 55 Treat. for Rape Injury | Y / N |
| 56 Circumstances Homicide & Assault / Location: Rape | |
| 57 Code | |
| 58 Weapon Used | Firearm / Knife / Hands, Fists, Voice, Etc / Other Dangerous |
| 59 Description of Weapons/Firearms/Tools Used in Offense | Handgun / Rifle / Shotgun / Unknown — Describe: |

## Property Description

| 60 Quantity | Stolen, Recovered, Lost, Found, or Destroyed (Include Make, Model, Size, Type, Serial Number, Color, Etc.) | 62 Dollar Value Stolen | Damaged | 63 Recovered Date | Value |
|---|---|---|---|---|---|
| 4 | Loads of wood cut and removed without authorization. | | | | |
| | (See ticket breakdown for volumes and prices) | | | | |

[ ] Continued in Narrative

## Dollar Value

64 Motor Vehicle — 65 Currency, Notes — 66 Jewelry — 67 Clothing/Furs — 68 Firearms — 69 Office Equipment — 70 Electronics — 71 Household — 72 Consumable Goods — 73 Livestock — 74 Miscellaneous (S / R / D / C)

## Vehicles

75 Check Categories: [ ] Stolen [ ] Recovered [ ] Suspects Veh. [ ] Victims Veh. [ ] Unauth. Use [ ] Abandoned

76 # Stolen — 77 LIC. — 78 LIS. — 79 LIY. — 80 Tag Color — 81 VIN

82 VYR — 83 VMA — 84 VMO — 85 VST — 86 VCO Top: Bottom: / — 87 Additional Description

Stolen MTR Veh Only — 88 Area Stolen: [ ] Bus. [ ] Res. [ ] Rur. — 89 Ownership Verified By: Tag Receipt / Bill of Sale / Title / Other — 90 Warrant Signed [ ] N [ ] Y #

91 Auto Insurer Name (Company) Address (Street, City, State, Zip) — 92 Phone ( )

Motor Veh. Recovery Only Required for 24XX UCR Code — 93 Stolen in Your Jurisdiction? [ ] Y [ ] N Where? — 94 Recovered in Your Jurisdiction? [ ] Y [ ] N Where?

TYPE OR PRINT IN BLACK INK

ACJIC-32 REV. 10-90

INCHES 1 2 3 4 5 6

EXHIBIT C
ATTACHMENT D, P. 2

OFFICER'S WORK PRODUCT MAY NOT BE PUBLIC INFORMATION

**INCIDENT/OFFENSE REPORT CONTINUED**

95 DATE AND TIME OF REPORT: 1 0 0 6 0 5 1400 PM
96 CASE #: 5 3 0 4 1 1 1 1 0 9
97 SFX:
98: OFFENDER / SUSPECT / MISSING PERSON
CHECK IF MULTIPLE

| Field | Value |
|---|---|
| 99 NAME (LAST, FIRST, MIDDLE) | Todd Slusher, Cherokee Timber Company |
| 100 NICKNAME/ALIAS | |
| 101 RACE | W |
| 102 SEX | M |
| 103 DOB | 0 1 2 9 6 1 |
| 104 AGE | 44 |
| 105 ADDRESS (STREET, CITY, STATE, ZIP) | 3608 Willow Lane Drive Montgomery, AL 36109 |
| 106 HGT | 5'11 |
| 107 WGT | 220 |
| 108 EYE | Blu |
| 109 HAIR | Bro |
| 110 COMPLEXION | |
| 111 PROBABLE DESTINATION | 334-224-6903 334-567-0637 CELL |
| 112 ARMED? | Y / N |
| 113 WEAPON | |
| 114 CLOTHING | |
| SCARS / MARKS / TATOOS | |
| 115 | ARRESTED / WANTED |

| Field | Value |
|---|---|
| 116 NAME (LAST, FIRST, MIDDLE) | Mark Kynard |
| 117 NICKNAME/ALIAS | |
| 118 RACE | W |
| 119 SEX | M |
| 120 DOB | 1 1 2 2 6 7 |
| 104 AGE | 37 |
| 122 ADDRESS (STREET, CITY, STATE, ZIP) | 301 Houser Street, Montgomery, AL 36110 334-269-5312 HOME |
| 123 HGT | 5'10 |
| 124 WGT | 129 |
| 125 EYE | BRO |
| 126 HAIR | BRO |
| 127 COMPLEXION | |
| 128 PROBABLE DESTINATION | |
| 129 ARMED? | Y / N |
| 130 WEAPON | |
| 131 CLOTHING | |
| SCARS / MARKS / TATOOS | |
| 132 | ARRESTED / WANTED |

WITNESSES

| | 133 NAME (LAST, FIRST, MIDDLE) SEX, RACE, DOB | SEX | RACE | 134 ADDRESS (STREET, CITY, STATE, ZIP) | 135 RES. PHONE | 136 BUS. PHONE |
|---|---|---|---|---|---|---|
| #1 | | M F | B W H A I | | ( ) | ( ) |
| #2 | | M F | B W H A I | | ( ) | ( ) |
| #3 | | M F | B W H A I | | ( ) | ( ) |
| #4 | | M F | B W H A I | | ( ) | ( ) |

WITNESS #1 SSN | WITNESS #2 SSN | WITNESS #3 SSN | WITNESS #4 SSN

NARRATIVE

137

On July 26, 2005 I received a faxed complaint from Darden concerning an alleged timber theft, criminal trespass, and BMP violation. I told Darden that I could not investigate the BMP violation, but gave her information on how to report it through channels. According to her complaint, she along with Paul Pogue had signed a timber contract with Cherokee timber to cut 30 acres of a 50 acre tract. The area to be cut had been flagged prior to logging. They had discovered that the logger, Mark Kynard had started cutting timber in the wrong area. They had requested that the operation be stopped and that the logger leave the property. Kynard left upon the advise of his boss, Todd Slusher. Initially the complaint had been serviced by Officer Danny Clark and Perry Co. Manager Cedric Hudson. They made a site visit, and met with the Landowner and the Timber Buyer. According to Clark, the incident appeared to be an unintentional timber trespass. He handled the complaint in this manner: He advised Slusher that he was liable for his logger cutting in the wrong area and he was bound by law to pay the landowner double fair market value for any timber removed from this area. Clark told me that the discussion got heated between Pogue and Slusher, and he almost had to get between them. He advised the parties to work out an agreement and felt that this was a civil matter between the parties. He left the scene that day, and turned the investigation over to me when I returned from Vacation in early July.

CONTINUED ON SUPPLEMENT (Y) N

ASSISTING AGENCY ORI | ASSISTING AGENCY CASE # | SFX

I hereby affirm that I have read this report and that all information given by me is correct to the best of my knowledge. I will assume full responsibility for notifying this agency if any stolen property or missing person hereby reported is returned.

SIGNATURE

138 LOCAL CODE
139 STATE CODE

MULTIPLE CASES CLOSED | 140 CASE # | 141 SFX | 142 CASE # | 143 SFX | 144 CASE # | 145 SFX | ADDITIONAL CASES CLOSED NARRATIVE Y N

ADMINISTRATION

147 CASE STATUS: ■ PENDING / INACTIVE / CLOSED
ENTERED ACKNLDG. Y N

148 CASE DISPOSITION:
- CLEARED BY ARREST (JUV.)
- CLEARED BY ARREST (ADULT)
- UNFOUNDED

EXCEPTIONAL CLEARANCE:
- SUSPECT/OFFENDER DEAD
- OTHER PROSECUTION
- EXTRADITION DENIED
- LACK OF PROSECUTION
- JUVENILE, NO REFERRAL
- DEATH OF VICTIM

149 REPORTING OFFICER: T. Chandler — ID # 411
150 REPORTING OFFICER: ID #
151 SUPERVISOR APPROVAL: ID #
152 WATCH CMDR.: ID #

EXHIBIT C

ATTACHMENT D, p. 3

OFFICER'S WORK PRODUCT MAY NOT BE PUBLIC INFORMATION

# ADDITIONAL INCIDENT/OFFENSE NARRATIVE CONTINUED

| 3 DATE AND TIME OF THIS REPORT | | 4 CASE # | 5 SFX |
|---|---|---|---|
| 10 06 05 | 14:00 MIL | 5304111109 | |

8 TYPE REPORT ☒ CONTINUATION ☐ FOLLOW-UP

NARRATIVE

Initial Investigation Steps:
Contacted Darden and obtained informaiton. Darden told me that she did not want anyone to go to jail over this but did want to be paid for all the timber removed. She told me that Cherokee timber had paid her $1000.00 for four loads of wood. She told me that she was 120% sure that there was more wood taken from her property than was paid for and that she knew where it went. Accoridng to Clark and Hudson, approximately two-three acres were cut and the area appeared to contain no more than the four loads of wood. I tried to explain this to Darden; however, she was adamant that Clark was siding with Slusher. I Instructed Darden not to cash the check from Slusher until I had a chance to talk with him. Darden told me that she knew that the wood had been delivered to several mills around Centerville. She told me that she knew Kynard was in business with a man called Jimmy Ingram and that I should look into their relationship. She felt that once I did this I would find her wood.

I contacted Cherokee timber and talked with Slusher. He told me the following:
He had signed a contract with the Pogues to cut timber. The area to be cut was flagged by Pogues consultant prior to logging. He took Kynard to the site and showed him where to cut. He went to Tennessee on vacation, and was unaware of any problems until he returned from vacation. He called Kynard and instructed him to meet him on the site and remove his equipment as he had been instructed by the Pogue's. I told Slusher that by law, cutting timber in the wrong area, even by mistake and without the owner's consent left him liable to the landowner for double the fair market value of the timber. He indicated to me that he had paid the Pogues for the tickets and he thought the incident had been settled, but was willing to talk to me and do what was necessary to settle the problem with the landowners. I told him I would be in touch with him at a later time. He agreed to meet with me at his office in Wetumpka.

I talked with Paul Pogue concerning the investigation. He told me that he and his wife disagreed on how to resolve the incident. He was not really interested in the wood or the money, but rather interested in prosecuting the perpatrators for stealing his timber. He told me that Kynard was working with a Jimmy Ingram and that they had been stealing timber from citizens in Dallas and Perry coutny for years. He told me to check with local mills and I would find this out.

I contacted numerous mills and timber dealers around Dallas and Perry Counties. So far, no wood has been delivered or checks been paid to Jimmy Ingram in over two years. Mark Kynard told me that he has on occassion, delilvered some wood through Saco Wood; however, not on the dates that he was delivering timber from the Pogue tract. In checking records with Saco, I was able to validate his information. In a telephone interview, Kynard told me that he only hauled four loads of wood from the tract and he took these loads to IP through Cherokee timber's dealership. To date no other load tickets have surfaced that can be connected to the Pogue's tract. None of the mills that I contacted had any records of dealing with Jimmy Ingram in over two years. At this time Jimmy Ingram is not in the logging business according to local area foresters. Kynard, however, is using Ingram's old equipment.

Mills and Dealers contacted: Cherokee Timber, Elam Timber, Cahaba Timber, H&H Lumber, IPC, Belcher Lumber, Freeman-Patrick, Seaman's Timber, Scott Taylor Timber, Saco Wood, Thomas Forestry, Blue Ox Timber, Baseline Forestry, Buchanan Timber.

Meeting set with Slusher for 10-10-05 at his office. I will review records of deliveries and payments to Mark Knyard and match these with records from IPC and Saco Wood. If all records match up, I will have no evidence to substantiate the theft allegations. However, the liability of Cherokee Timber for the unauthorized cutting still has to be setttled. Based on Alabama law, I will arrive at a dollar figure owed to the Pogues and present it to Slusher at our meeting.

EXHIBIT C
ATTACHMENT E

# TIMBER MART-SOUTH

**South-wide Average Prices**

**Products & Services**
**Delivery & Payment**

**South-wide Average Prices**
**Market Newsletters**

**Who is Timber Mart - South**
**Contact Us**

**Southeastern Average Stumpage Prices - US$/ton**

| | 2Q 05 | 1Q 05 (one quarter) | Δ% | 2Q 04 (year ago) | Δ% |
|---|---|---|---|---|---|
| Pine Sawtimber | $40.53 | $40.48 | +0.1% | $37.41 | +8.3% |
| Pine Chip-n-saw | $23.47 | $24.28 | -3.3% | $22.69 | +3.4% |
| Pine Pulpwood | $7.41 | $7.74 | -4.3% | $6.35 | +16.7% |
| Hardwood Sawtimber | $21.56 | $21.62 | -0.3% | $18.91 | +14.0% |
| Hardwood Pulpwood | $7.03 | $6.68 | +5.2% | $5.43 | +29.5% |

**3rd Quarter 2005 prices will be available from TMS in early October**

Pine Stumpage Price Trend | Hardwood Stumpage Price Trend

**Press Release**

October 19 2004 Timber Prices in a Stormy Season

May 10 2004 Sawtimber Prices Strong

February 23 2004 Timber Prices Mixed

November 10 2003 Pulpwood Prices Up, Hardwood More Than Pine

August 4 2003 Pulpwood Weaker, Sawtimber Flat

May 13 2003 Hardwood High and Pulpwood Continued to Recover

January 30 2003 Pulpwood Up; Sawtimber Higher

October 31 2002 The Pulpwood Slide Continues; Hardwood Sawtimber Shows Some Strength

July 23 2002 Pine Sawtimber Up, Pine Pulpwood at Record Lows

April 22 2002 Pine Sawtimber Recovers, Hardwood Pulpwood Down

January 24 2002 Pine Sawtimber Up, Pine Pulpwood and Hardwood Prices Down

October 22 2001 Sawtimber Prices Up, Pine Pulpwood Still Low

July 26 2001 Pine Sawtimber Stumpage Prices Stable and Hardwood Prices Up

April 27 2001 Poor Pine Markets Continue

January 20, 2000: Pine Prices Continue Down, Hardwood at Record Levels

EXHIBIT C
ATTACHMENT F

# Pogue Darden Scale Ticket Payment Summary

| Ticket Number | Tons | Price/Ton | Total Ticket Price | Timber Mart South Prices/ Ton | Double Stumpage |
|---|---|---|---|---|---|
| 603446 | 26.83 | $8 | $214.64 | $7.03 | $429.28 |
| 69773 | 26.73 | $25 | $668.25 | $23.47 | $1,336.50 |
| 603609 | 19.59 | $4.00 | $78.36 | $7.41 | $290.32 |
| 603176 | 20.78 | $4.00 | $83.12 | $7.41 | $307.96 |
| | | | | | |
| Totals | | | $1,044.37 | | $2,364.06 |

Prices in Green- Highest Price between Contract prices and Timber Mart South Prices

Prices in Red- Double Stumpage Value of the higher price between Contract Price and Timber Mart South Price.

EXHIBIT C
ATTACHMENT G, p. 1

# ALABAMA UNIFORM INCIDENT/OFFENSE REPORT SUPPLEMENT REPORT

OFFICER'S WORK PRODUCT MAY NOT BE PUBLIC INFORMATION

| 1 ORI # | 2 AGENCY NAME | 3 DATE AND TIME OF THIS REPORT | | 4 CASE # | 5 SFX |
|---|---|---|---|---|---|
| 0031000 | ALABAMA FORESTRY COMMISSION | 10/12/05 | 09:30 ☒ MIL | 530411109 | |

EVENT

- 6 VICTIM'S NAME (ORIGINAL REPORT): Pogue, Paul and Valissa
- 7 ORIGINAL OFFENSE DATE: 06/29/05
- 8 TYPE REPORT: ☐ CONTINUATION ☒ FOLLOW-UP
- 9 ORIGINAL INCIDENT/OFFENSE: Unauthorized Cutting and Removal of Timber
- 10 UCR CODE:
- 11 STATE CODE/LOCAL ORDINANCE: 1975 AL 9-13-60
- 12 NEW INCIDENT/OFFENSE:
- 13 UCR CODE:
- 14 STATE CODE/LOCAL ORDINANCE:
- 15 HAS AN ARREST BEEN MADE? ☐ 1 YES ☒ 2 NO
- 16 DATE OF ARREST:
- 17 HAS WARRANT BEEN OBTAINED? YES ☐ NO ☒ WARRANT #
- 18 DATE OF WARRANT:
- 19 PRIOR YEAR PREMISE WEAPON

| 20 | NAME | 101 RACE | 102 SEX | 103 DOB | 104 AGE |
|---|---|---|---|---|---|
| ☒ DEFENDANT | Slusher, Todd, Cherokee Timber | ☒ W | ☒ M | 01/29/61 | 44 |

| 20 | NAME | 118 RACE | 119 SEX | 120 DOB | 121 AGE |
|---|---|---|---|---|---|
| ☒ DEFENDANT | Kynard, Mark- Logger | ☒ W | ☒ M | 11/22/67 | 37 |

NARRATIVE

Met with Slusher at his office on 10-10-05. Officer Danny Clark was also present.

I asked Slusher to produce his payment summary sheets for Mark Kynard for the months of June and July 2005. He told me that he would have his bookeeper compile the data and fax it to me within a week.

I showed Slusher a summary table that I had made showing the amount of money that I felt he owed the Pogues. I explained that this was based on the highest price between his contract price and Timber Mart Average Stumpage Prices across the Southeastern States. I told him that Mrs. Pogue's concern was that they did not agree to any prices on the 10 acres in question and felt that he owed them what he had been paid for the wood. He told me that he had spoken with their attorney in the past and that he would be willing to reply to a letter from him concerning any requests for more money. I told him that as soon as I had checked his records, I would contact the Pogue's and present the case to them. At that time, they could then decide as to what direction they wanted to go with this case, but he was still liable under the law, to pay them double market value for the four loads.

Slusher told me that he had never intended to cut the wrong area on their property, and was under the impression that he had shown Kynard the right place to cut before he left on vacation. He did not deny that the wrong area had been cut, but told us that the mistake was purely unintentional and that he was willing to settle the matter with the Pogue's if possible. He told me that to his knowledge, he had paid for every ticket that had been hauled by Kynard but until now had not been presented with any figures concerning double market value of the wood.

In this situation, it is apparent that the Pogue's did not want to cut the 10 acre tract in question. Accidential or not, Kynard did cut wood from this area and haul it to the mill under Cherokee Timbers' contract with International Paper Company. Cherokee Timber was paid

22 LOCAL USE
23 STATE USE

DOLLAR VALUE

24 MOTOR VEHICLE (S R D C) | 25 CURRENCY, NOTES | 26 JEWELRY | 27 CLOTHING/FURS | 28 FIREARMS | 29 OFFICE EQUIPMENT | 30 ELECTRONICS | 31 HOUSEHOLD | 32 CONSUMABLE | 33 LIVESTOCK | 34 MISCELLANEOUS

MOTOR VEHICLE RECOVERY ONLY REQUIRED FOR 24XX UCR CODE — 35 STOLEN IN YOUR JURISDICTION? YES ☐ NO ☐ WHERE? — 94 RECOVERED IN YOUR JURISDICTION? YES ☐ NO ☐ WHERE?

MULTIPLE CASES CLOSED — 37 CASE # — 38 SFX — 39 CASE # — 40 SFX — 41 CASE # — 42 SFX — 43 ADDITIONAL CASES CLOSED NARRATIVE ☐ Y ☐ N

ADMIN

44 CASE STATUS: ☒ 1 - PENDING ☐ 2 - INACTIVE ☐ 3 - CLOSED

ENTERED ACIC/NCIC DATE ☐ Y ☐ N

45 CASE DISPOSITION: ☐ 1 - CLEARED BY ARREST (JUV) ☐ 2 - CLEARED BY ARREST (ADULT) ☐ 3 - UNFOUNDED ☐ 5 - ADMINISTRATIVELY CLEARED ☐ 4 - EXCEPTIONAL CLEARANCE ☐ A - SUSPECT/OFFENDER DEAD ☐ B - OTHER PROSECUTION ☐ C - EXTRADITION DENIED ☐ D - LACK OF PROSECUTION ☐ E - JUVENILE, NO REFERRAL ☐ F - DEATH OF VICTIM

46 REPORTING OFFICER: Tony Chandler ID # 411

47 ASSISTING OFFICER: ID #

48 SUPERVISOR APPROVAL ID # — 49 WATCH CMDR ID #

EXHIBIT C
ATTACHMENT 6, p. 2

OFFICER'S WORK PRODUCT MAY NOT BE PUBLIC INFORMATION

ADDITIONAL INCIDENT/OFFENSE NARRATIVE CONTINUED

3 DATE AND TIME OF THIS REPORT M D Y : AM PM [X] MIL 4 CASE # 5 SFX

8 TYPE REPORT [ ] CONTINUATION [X] FOLLOW-UP

NARRATIVE

a contract delivery price for the wood from this tract. It is the opinion of the AFC that no one, either the logger or the timber buyer should profit from the sale of this wood. In this case, fair market value of the wood should be double what the timber buyer received from IP when the unauthorized wood went across the mill scales. This information would be available via subpoena, from the accounting records at IP and or Cherokee Timber.

At this time, no evidence has surfaced to indicate that Mark Kynard hauled the wood from the Pogue's property to any mills other than IPC. These four loads of wood were delivered through Cherokee's dealership authorization (5G077) and payment for these four loads of wood was submitted to Cherokee Timber by IPC.

Although Kynard was using logging equipment he had borrowed from Jimmy Ingram, no evidence has been found to indicate that Kynard has a current business relationship with this individual.
Kynard, who occassionaly operates as a tree climber, cuts down yard trees and picks up small tracts of wood and sells it through Saco Wood or Cheorkee Timber. During the dates he was hauling from the Pogue tract, (6/28-7/1/05) no loads of wood were delivered through Saco. All loads were delivered through Cherokee Timber.

SYNOPSIS OF FINDINGS:
At this time, based on the details of the logging contract that was signed between Cherokee Timber and the Pogues, I feel that the matter between these parties constitutes a civil case. The contract provided to me indicates no specific area to be logged. The contract states in the initial paragraph, that all merchantable timber in Section 8, Township 18N, Range 10E containing 40 acres more or less is to be cut. In item 4, on the page of additions to the original contract, it specifies that trees marked in blue paint shall not be cut. Other than this, the contract does not specify where logging will take place. It is my understanding that the areas to be cut were flagged and shown to Slusher prior to logging. I have not seen any maps or other written documents that would indicate exactly where logging was to take place. To my knowledge, this matter was agreed upon by Slusher and Pogue prior to the start of logging. Whether or not a full understanding was reached between them at that time is not known to me.

In talking to the logger, Mark Kynard, I asked him why the four scale tickets had no landowner listed and why the county of origin was Macon instead of Perry? Kynard told me that he had used authorization tickets from a previous job he had worked in Macon county and the county name was already filled in on these tickets. According to Kynard, he did not have any blank tickets from Cherokee, and had used these tickets to deliver the wood. It did not matter to him about the county as long as the ticket got paid to Cherokee Timber, because Cherokee was only paying him to deliver the wood to the mill. He did write in the name Pope on one ticket, but was unsure if that was correct or not. With Slusher out of town on vacation and unable to confirm this, he just turned in the tickets and left the landowner name blank. He knew the ticket would be paid to Cherokee timber and felt that it was Cherokee's responsibility to pay the landowner for the wood he was hauling. Since he was the only logger on the tract, he felt sure that Slusher would know who the tickets belonged to for that time period.
Although this is not the recommended procedure and looks suspicious to landowners, this practice by itself, does not show intent to defraud on the part of the logger. IP is only bound by law to rely on the information provided by the seller. Cherokee Timber is bound by their contract with IP to guarantee that any wood they deliver under gatewood contract agreements has a free and clear title. Cherokee Timber was paid for the four loads by IP and did have a timber contract with the landowner to cut and deliver wood to any avaliable market. Cherokee timber did pay the landowner for these four tickets that were turned in by Kynard.

Based on this information, I do not find evidence to support allegations that Cherokee Timber Company intended to steal wood from the Pogue's property. By their own admissions, Cherokee Timber's logger did cut timber from the Pogue Property in an area that was not supposed to be cut. This constitutes a civil matter between the parties as to the fair market value of the timber removed. I am attaching a copy of Alabama Law 9-13-62 that explains the liability of Cherokee Timber in this case.

EXHIBIT C
ATTACHMENT H, p. 1

# FAX COVER SHEET

RUFUS LEWIS LIBRARY
3095 MOBILE HWY.
MONTGOMERY AL, 36108

TO: Hon. Tony Chandler

FAX NUMBER: 251-867-~~5368~~ 7302

SUBJECT: File Disclosure Request

FROM: Paul Pogue

FAX NUMBER: 251-479-7391

TELEPHONE NUMBER: 334-269-4178

1 OF 1 PAGES 10/14/2005

EXHIBIT C
ATTACHMENT H,
p. 2

PAUL POGUE
Old Mays Building
1704 Goode Street
Montgomery, Alabama 36104

October 14, 2005

Mr. Tony Chandler
Alabama Forestry Commission
Forestry Investigator
SW Region
Brewton, Alabama

Re: Request for file disclosure [Pogue Timber live and dead timber Section 8 Township 18n Range 10e, Perry County, Alabama]

Dear Mr. Chandler:

Forestry assets are missing from my property located in Perry County, Alabama. Please release a copy of your forestry investigative report. A copy of your report would be very much appreciated. Thank You.

Sincerely,

PAUL POGUE

Copy to: Alabama Department of Environmental Management

TOTAL P.01

EXHIBIT C
ATTACHMENT I




# MEMORANDUM

**Date**: October 20, 2005

**To:** Mr. Paul Pogue

**From:** Tony Chandler- SW Regional Investigator

**Regarding:** Request for Investigation Report

As you requested, I am submitting a copy of my investigation into the timber complaint on your property in Perry County, Alabama. Attached to the initial Incident/Offense Report you will find an Incident/Offense Supplement Report. My investigation notes and findings are written in the narrative sections of these reports. They are somewhat in chronological order as additional information has been obtained. You should also find a copy of the following documents:

A timber cutting contract signed with Todd Slusher, of Cherokee Timber Company.

Copies of four scale tickets representing the wood hauled from you property.

Copy of Alabama Forestry Law, Section 9-13-62.

A payment chart showing the amounts owed to you for each wood ticket. This chart also shows the average stumpage prices for the Southeast and the stumpage amount that you would be owed under AL 9-13-62. This is only an estimate based on stumpage prices at the time of your logging operation.

A copy of Timber Mart South average stumpage prices for the 2nd quarter of 2005.

If I can be of further assistance, please let me know.

*From:*
*Tony Chandler*
*Southwest Regional Investigator*
*2584 Ridge Road*
*Brewton, AL 36427*
*Telephone # 251-867-5368*
*Fax # 251-867-7302*




WILLIAM F. GARDNER
CRAWFORD S. McGIVAREN, JR.
SYDNEY F. FRAZIER, JR.
BENJAMEN T. ROWE
WILLIAM A. ROBINSON
PATRICK H. SIMS
DONALD J. STEWART
ROY J. CRAWFORD
WILLIAM K. THOMAS
F. GERALD BURNETT
DAVID S. DUNKLE
C. FRED DANIELS
G. THOMAS SULLIVAN
DAVID L. KANE
R. BOYD MILLER
R. CARLTON SMYLY
STEVE A. TUCKER
SANDY G. ROBINSON
HERBERT HAROLD WEST, JR.
RICHARD ELDON DAVIS
MELANIE MERKLE BASS
JOHN M. GRAHAM
IAN D. ROSENTHAL
MICHAEL E. TURNER
JARROD J. WHITE

DIANE H. CRAWLEY
ANNETTE LANNING KINDERMAN
ANNA FUNDERBURK BUCKNER
PHILLIP B. WALKER
DIANE BABB MAUGHAN
AMY BELL NELSON
JOHN ALLEN ROBERTS
JOSEPH D. STUTZ
SCOTT A. HOLMES

CABANISS, JOHNSTON, GARDNER, DUMAS & O'NEAL LLP

RIVERVIEW PLAZA

63 SOUTH ROYAL STREET, SUITE 700

MOBILE, ALABAMA 36602

L. MURRAY ALLEY
E.T. BROWN, JR.
OF COUNSEL

MAILING ADDRESS
P.O. BOX 2906
MOBILE, ALABAMA 36652
(251) 415-7300
FACSIMILE (251) 415-7350

BIRMINGHAM OFFICE
PARK PLACE TOWER
2001 PARK PLACE NORTH, SUITE 700
BIRMINGHAM, ALABAMA 35203
(205) 716-5200
FACSIMILE (205) 716-5389

E.H. CABANISS, 1857-1936
FORNEY JOHNSTON, 1879-1965
LUCIEN D. GARDNER, JR. 1903-1988
M. CAMPER O'NEAL, 1907-1989

December 14, 2005

Mr. Tony Chandler
Alabama Forestry Commission
2584 Ridge Road
Brewton, Alabama 36426

**RE: Paul Pogue vs.**
**International Paper Company, Inc.**
**Our File Number: 905656/09334**

Dear Tony:

This letter confirms the request I made to you by telephone today for a copy of any and all notes, reports, or other file materials generated as a result of Mr. Paul Pogue's complaint regarding cutting of his timber in Perry County. Thank you in advance for your assistance and if there are any copy charges associated with providing these documents to me, we will be happy to pay those.

Yours very truly,

**SANDY G. ROBINSON**, Attorney for International Paper Company

SGR/kg

EXHIBIT C
ATTACHMENT K,
p. 1




**2584 Ridge Road**
**Brewton, AL 36426**

January 5, 2006

Attorney Sandy G. Robinson
63 South Royal Street, Suite 700
Mobile, Alabama 36602

**RE: Pogue Investigation Report #905656/09334**

Dear Sandy:

As you requested, I am submitting a copy of my investigation into the timber complaint on the Pogue property in Perry County, Alabama. Before my investigation was completed, Mr. Pogue requested that I send him a copy of my findings to date. He led me to believe that he was not satisfied with my findings and was turning the case over to someone else.
The original Incident Report was completed by Investigator Danny Clark. Investigator Clark was initially assigned to this case while I was away on vacation. Included with this document are my Incident/Offense Report and Supplement Reports. My investigation notes and findings are written in the narrative sections of these reports. They are somewhat in chronological order as additional information has been obtained. You should also find a copy of the following documents:

- A timber cutting contract signed with Todd Slusher, of Cherokee Timber Company.
- Copies of four scale tickets representing the timber hauled from the Pogue property.
- A copy of Alabama's Forestry Law, Section 9-13-62.
- A payment chart showing the amounts owed to the landowner for each wood ticket. This chart also shows the average stumpage prices for the Southeast and the stumpage amounts that would be owed under AL 9-13-62. This is only an estimate based on stumpage prices at the approximate time of the logging operation.

EXHIBIT C
ATTACHMENT K,
p. 2

- A copy of Timber Mart South average stumpage prices for the 2nd quarter of 2005.

If I can be of further assistance, please let me know.

Sincerely,

Tony Chandler

Tony Chandler
SW Regional Investigator

EXHIBIT G
ATTACHMENT L, P. 1









TIMOTHY C. BOYCE
STATE FORESTER

RICHARD H. CUMBIE
ASST. STATE FORESTER

*Alabama Forestry Commission*
2584 RIDGE ROAD
BREWTON, AL 36426
251-867-5368

February 13, 2006

Mrs. Valissa D. Pogue
Route 6 Box 334
Selma, AL 36701

Dear Mrs. Pogue:

This letter is in reply to the timber complaint on your property in Perry County. After looking into the matter, Mr. Danny Clark and I have not uncovered any evidence to indicate that timber was stolen from your property. Mr. Todd Slusher, the timber buyer, has admitted that his logger Mark Kynard, cut and hauled four loads of timber from your property. He also admitted to me that he later discovered that the timber was cut in the wrong location, and that it was purely unintentional. He has offered to respond to a request from your attorney concerning any additional money that he may owe you for this timber. Considering the circumstances in this case, I feel that this complaint is civil in nature and does not constitute a criminal offense.

With that in mind, I would like to offer you the following options in handling this situation.

**Option 1.** If you do not agree with the wood ticket volumes, you can hire a consultant forester to estimate the volume and value of timber cut on your property. This is commonly called a stump cruise. A list of these individuals should be available at the Perry County Forestry Commission Office. After the cruise is completed, approach the timber buyer with your information and request a settlement. You can also ask for reimbursement of the expense of the stump cruise. You are entitled by state law (Section 9-13-62) to double the fair market value for the timber that was removed. In this case, since the timber was removed from an

EXHIBIT C
ATTACHMENT L, p.2

area that was not authorized for cutting, you should be entitled to double the value of the wood when it was sold at market by Cherokee Timber. These figures would be available from the records at Cherokee Timber. Again, Mr. Slusher has indicated his willingness to settle this matter with you and your attorney. I feel that he will be willing to listen to any reasonable request concerning the matter.

**Option 2.** Retain a lawyer to handle the whole process in civil court.

Either way, I hope that you will be able to settle this matter to your satisfaction.

Sincerely,

Tony Chandler
SW Regional Investigator

EXHIBIT C
ATTACHMENT M




Making Alabama Better For ...



TIMOTHY C. BOYCE
STATE FORESTER

RICHARD H. CUMBIE
ASST. STATE FORESTER

*Alabama Forestry Commission*
2584 RIDGE ROAD
BREWTON, AL 36426
251-867-5368

February 13, 2006

Mr. Paul Pogue
Old Mays Building
1704 Goode Street
Montgomery, AL 36104

Dear Mr. Pogue:

In our last telephone conversation, you asked me to send you a letter stating that you have never officially signed or filed a complaint in my office. I have a complaint in this office that was initially filed by your wife. I have been under the impression that this complaint concerned property belonging to both of you. I have recently been informed by you that this is a totally different matter. Apparently there was some misunderstanding between us concerning her initial complaint. Please accept my apology if this has caused you any inconvenience.

Sincerely,

Tony Chandler
SW Regional Investigator